Butz, J.
*495 Appellants A.L. (mother) and S.K. (father), appeal from the juvenile court's orders terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1] They contend the juvenile court erred in determining the beneficial relationship exception to adoption did not apply. Father also contends the juvenile court should have continued the hearing to consider placement of the minor with the paternal grandmother. We affirm the juvenile court's orders.
*847 FACTUAL AND PROCEDURAL BACKGROUND
On March 5, 2014, Sacramento Department of Health and Human Services (the Department) filed a section 300 petition, alleging that the one-year-old minor came within section 300, subdivision (a) in that the minor was at substantial risk of serious physical harm due to parents' history of domestic violence in the minor's presence, which resulted in physical confrontations, including an incident wherein the minor fell to the ground when father pushed her to get her out of the way and another incident wherein father punched the minor on her left thigh. The petition also alleged the minor came within section 300, subdivision (b) in that the minor was at substantial risk of serious physical harm because of the lack of adequate parental supervision or *496 protection due to parents' history of domestic violence and to father's untreated anger management problem-which was exacerbated when he drank alcohol and which has contributed to his extensive history of violent crimes.
The social worker's report stated that father had a criminal record, including convictions for felony domestic violence in 2011 and 2012. A police report from January of 2014 reported that mother had stated that the parents got in an argument, father took away mother's phone, punched her in the back with a fist, and pushed and knocked over the baby. In February of 2014, mother went to the police department counter reporting threats by father and allegations that father had beaten her and the minor. Mother applied for a restraining order in February 2014, but changed her mind. Her affect was " 'matter-of-fact' " when she explained that obtaining the restraining order was " 'too stressful and expensive to travel back and forth to court' " and that she would prefer a family friend adopt her child.
During her subsequent interview with the social worker, mother denied any domestic violence, claiming she had made a false report. Father also denied any domestic violence. The social worker interviewed a friend of mother who stated she had witnessed father hit the minor and that mother had reported father was abusive to the minor. The friend also stated that mother hit the minor when she was angry, cursed at the minor, and told the minor she wished she had died at birth.
On May 22, 2014, the juvenile court sustained the allegations in the Department's amended section 300 petition. Parents were ordered to participate in reunification services, including services for domestic violence, anger management, and parenting. Mother was also referred for a mental health assessment and father was ordered to participate in general counseling and substance abuse services.
Mother reported another incident of domestic violence with father in June 2014, after father punched her repeatedly in the face. She obtained a restraining order and left the home in September 2014. Thereafter, mother moved in with a new boyfriend and became pregnant with his child. In January 2015, mother called the police after father contacted her and her boyfriend, despite the restraining order in place.
The social worker discovered mother's boyfriend had 23 Child Protective Services (CPS) referrals for abuse/neglect and was facing criminal charges for sexual abuse, including vaginal penetration and forced oral copulation, of his daughter in New York. Nonetheless, mother was unable to clearly identify any "red flags," did not believe the allegations, and blamed the daughter's mother for causing trouble.
*497 Both parents were participating in services and reunification services were continued at the six-month review hearing.
*848 The social worker's 12-month permanency review report, dated April 23, 2015, recommended termination of reunification services. With regard to father, the social worker reported that while he had completed many of his reunification requirements, he "continues to minimize" his role in domestic violence, and he denies that domestic violence led to the minor's removal from the home. He also denies he violated the restraining order against him by contacting mother and her boyfriend in January 2015. Father failed "to progress in the amount of time or frequency that he has seen [the minor] and has missed eight of his 25 visits." Father thereafter missed several more visits, testing dates, and appointments with the social worker. Father told the social worker that if the judge refuses to return the child to his custody, "then I just will tell the judge, send her to her mother's[.] I am done with this."
With regard to mother, the social worker reported that while mother had completed the majority of her case plan, she did not follow through with individual counseling and was adamant that she will not do so because she does not see the need for it. She was not independent and had moved in with her boyfriend, whose female baby she was carrying, despite safety concerns surrounding the boyfriend's numerous CPS referrals and that he was awaiting trial on charges that he molested his daughter. Mother's visits with the minor remained supervised and she had been redirected many times about bribing the minor or using hurt and pain to gain the minor's attention.
The juvenile court terminated reunification services and set a section 366.26 hearing. The social worker's section 366.26 hearing report recommended termination of parental rights.
The minor was in good health and developmentally on target. She had been placed with her current foster parents since March 2014 and they were interested in adopting her. She had developed a close and affectionate relationship with her foster parents and they had fully integrated her into the family. Father objected to the termination of parental rights, requested return of the minor or, alternatively, placement of the minor with the paternal grandmother.
At the section 366.26 hearing, both parents testified regarding the nature of their visits and relationships with the minor. Both parents argued that they had established the requisite requirements to prove the beneficial parental relationship exception to adoption. The juvenile court found the minor was likely to be adopted, that termination of parental rights would not be *498 detrimental to the minor, and that no exception to adoption applied. The juvenile court then terminated parental rights and selected a permanent plan of adoption.
DISCUSSION
1.0 Beneficial Relationship Exception to Adoption**
2.0 Relative Placement Preference
"Section 361.3 gives 'preferential consideration' to a relative's request for placement, which means 'that the relative seeking placement shall be the first placement to be considered and investigated.' (§ 361.3, subd. (c)(1).)" (Cesar V. v. Superior Court (2001) 91 Cal.App.4th 1023, 1033, 111 Cal.Rptr.2d 243 (Cesar V. ).) "When considering whether to place the child with a relative, the juvenile court must apply the [section 361.3] placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's *849 request for placement." (In re Isabella G. (2016) 246 Cal.App.4th 708, 719, 201 Cal.Rptr.3d 64.)
The relative placement provisions in section 361.3 apply when a child is taken from her parents and placed outside the home pending the determination whether reunification is possible. (In re Sarah S. (1996) 43 Cal.App.4th 274, 285, 50 Cal.Rptr.2d 503.) The relative placement preference also applies to placements made after the dispositional hearing, even when reunification efforts are no longer ongoing, whenever a child must be moved. (§ 361.3, subd. (d); see Cesar V. , supra , 91 Cal.App.4th at pp. 1031-1032, 111 Cal.Rptr.2d 243.) However, the relative placement preference does not apply to an adoptive placement; there is no relative placement preference for adoption. (In re Lauren R. (2007) 148 Cal.App.4th 841, 855, 56 Cal.Rptr.3d 151 ; see In re K.L. (2016) 248 Cal.App.4th 52, 65-66, 203 Cal.Rptr.3d 159.) Instead, at the section 366.26 hearing, the court must apply the caretaker preference under section 366.26, subdivision (k).
Here, father contends the juvenile court's order terminating parental rights must be reversed because the Department and juvenile court failed to assess the paternal grandmother's request for placement under the requirements of section 361.3. We conclude father lacks standing to raise this contention and, in any event, forfeited it by failing to raise it in the juvenile court.
*499 2.1 Father's Standing
Whether a person has standing to raise a particular issue on appeal depends upon whether the person's rights were injuriously affected by the judgment or order appealed from. (Cesar V. , supra , 91 Cal.App.4th at pp. 1034-1035, 111 Cal.Rptr.2d 243.) A person does not have standing to urge errors on appeal that affect only the interests of others. (In re Gary P. (1995) 40 Cal.App.4th 875, 877, 46 Cal.Rptr.2d 929.) Accordingly, a parent is precluded from raising issues on appeal which do not affect his or her own rights. (In re Jasmine J. (1996) 46 Cal.App.4th 1802, 1806, 54 Cal.Rptr.2d 560.)
The section 361.3 relative placement preference requires "preferential consideration" be given to a relative's request for placement of a dependent child. (§ 361.3, subd. (a).) This section protects a relative's "separate interest" in a relationship with the child. (Cesar V. , supra , 91 Cal.App.4th at pp. 1034-1035, 111 Cal.Rptr.2d 243.) In contrast, a parent's interest in a dependency proceeding is in reunifying with the child. (In re Vanessa Z. (1994) 23 Cal.App.4th 258, 261, 28 Cal.Rptr.2d 313 ; § 361.5.) The parental interest in reunification is distinguished from a relative's "separate interest" in preferential placement consideration or in having a relationship with the child. (Cesar V. , at pp. 1034-1035, 111 Cal.Rptr.2d 243.)
In view of this distinction, the court in Cesar V. held that a parent does not have standing to raise relative placement issues on appeal, where the parent's reunification services have been terminated. (Cesar V. , supra , 91 Cal.App.4th at p. 1035, 111 Cal.Rptr.2d 243.) This is because decisions concerning placement of the child do not affect the parent's interest in reunification, where the parent is no longer able to reunify with the child. (See id . at pp. 1034-1035, 111 Cal.Rptr.2d 243.) In contrast, where the parent's reunification services have not been terminated, placement of the child with a relative arguably affects the parent's chances of reunifying with the child. Thus, where reunification remains a possibility, the parent has standing to raise relative placement issues on appeal. (Id . at p. 1035, 111 Cal.Rptr.2d 243, citing *850 In re Daniel D. (1994) 24 Cal.App.4th 1823, 1833-1834, 30 Cal.Rptr.2d 245.)
Here, father's reunification services had been terminated. Father cannot establish that his rights and interest in reunification are injuriously affected by any failure to consider the paternal grandmother for placement at the section 366.26 hearing, from which he has filed his appeal.
Nevertheless, father argues that placement with the paternal grandmother could have triggered the relative caregiver exception to adoption under section 366.26, subdivision (c)(1)(A), which provides that the court need not terminate parental rights when "[t]he child is living with a relative who is unable *500 or unwilling to adopt the child because of circumstances that do not include an unwillingness to accept legal or financial responsibility for the child, but who is willing and capable of providing the child with a stable and permanent environment through legal guardianship, and the removal of the child from the custody of his or her relative would be detrimental to the emotional well-being of the child...." (See In re Esperanza C. (2008) 165 Cal.App.4th 1042, 1053-1054, 81 Cal.Rptr.3d 556 ; In re H.G. (2006) 146 Cal.App.4th 1, 9-10, 52 Cal.Rptr.3d 364.) Accordingly, he reasons he has standing because if the juvenile court had ordered placement with the paternal grandmother, it would have advanced his argument that parental rights should not be terminated under this exception. We disagree.
Even if the juvenile court had decided placement of the minor with the paternal grandmother was appropriate, it would have then immediately proceeded to the permanency determinations of the section 366.26 hearing. That placement would not have advanced father's argument that the relative caretaker exception under section 366.26, subdivision (c)(1)(A) applied because (1) there was no indication the paternal grandmother was unwilling to adopt the minor, and (2) the minor would not have been living with her paternal grandmother for any length of time so she would not have developed a relationship with the paternal grandmother that would have made removal detrimental to the minor's emotional well-being.
Accordingly, father is not an aggrieved party and lacks standing to assert error-in the failure to place the minor with the paternal grandmother or otherwise raise the relative placement-under the section 361.3 issue on appeal.
2.2 Forfeiture
Even if father had standing to raise the relative placement preference, he forfeited his contentions that the Department and juvenile court failed to assess the paternal grandmother's request for placement under the requirements of section 361.3 by failing to pursue the matter in the juvenile court.
Father argues that reversal is required because it does not appear in the record that the social worker conducted a proper search for potential relative placements within 30 days from when the minor was removed from parental custody, as required by section 361.3, subdivision (a)(8) and section 309, subdivision (e). He also argues that reversal is required because the social worker did not do enough to assist the paternal grandmother when she came forward in December 2014, just after the six-month review hearing, and stated she was interested in placement. These contentions are forfeited.
"Dependency appeals are governed by section 395, which provides in relevant part: 'A judgment in a proceeding under Section 300 may be *501 appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment.' " ( *851 In re Meranda P. (1997) 56 Cal.App.4th 1143, 1149, 65 Cal.Rptr.2d 913.) Section 395 makes the dispositional order the appealable "judgment." Therefore, all subsequent orders are directly appealable, except for orders setting a section 366.26 hearing, challenged by a timely writ petition, which was summarily denied or not decided on the merits. (In re Meranda P. , at p. 1150, 65 Cal.Rptr.2d 913 ; § 366.26, subd. (l ).) If father believed the social worker had not complied with statutory requirements in pursuing the paternal grandmother as a relative placement, he could have raised the issue in the juvenile court and, thereafter, on appeals from the disposition order, the 12-month review order, or other appealable orders. He did not do so. He therefore forfeited his objection.
Even if father could still challenge the adequacy of the social worker's pursuit of placement with the paternal grandmother at the time of the section 366.26 hearing, father still forfeited his claim by failing to raise his relative placement preference objection at the hearing. Although father identified the "[d]etermination of whether the Department has taken sufficient measures to investigate Paternal Grandmother's ability to take custody of the minor child" as a "factual issue" in his pretrial brief, he did not present evidence on this issue, request factual findings, or request any ruling regarding whether the paternal grandmother was properly investigated for placement or entitled, at any point, to relative placement preference. By failing to litigate this issue or request a ruling from the juvenile court, father failed to preserve the issue on appeal. (People v. Ramirez (2006) 39 Cal.4th 398, 472-473, 46 Cal.Rptr.3d 677, 139 P.3d 64 ; In re Casey D. (1999) 70 Cal.App.4th 38, 54, 82 Cal.Rptr.2d 426 [appellate court in a dependency proceeding normally may not consider an objection raised for the first time on appeal].)
Relying in part on Cesar V. , father argues the juvenile court should have held a hearing under section 361.3 to evaluate the paternal grandmother for placement because the Department had not fulfilled its duties to do so. He further argues that the juvenile court had a duty to hold this hearing sua sponte, again relying on Cesar V. Cesar V . is inapposite in nearly every way.
In Cesar V ., the children's foster family was not interested in adoption, necessitating a change of placement as the case approached the section 366.26 hearing, and the parties stipulated to the evaluation of a specific relative. (Cesar V. , supra , 91 Cal.App.4th at p. 1027, 111 Cal.Rptr.2d 243.) The social worker's subsequent section 366.26 report stated that the subject relative was found not to be a suitable placement. (Cesar V. , at pp. 1027-1028, 111 Cal.Rptr.2d 243.) At the section 366.26 hearing, father's counsel challenged the denial of placement with the relative and, after discussions, the parties stipulated to proceed in a bifurcated fashion *502 and resolve the challenge to placement prior to the permanency issues. (Cesar V. , at p. 1028, 111 Cal.Rptr.2d 243.) The juvenile court then heard five days of testimony and argument on the issue. (Ibid . ) The juvenile court thereafter found the agency "acted upon its order" to assess the relative for placement and found the agency had not "abuse[d] its discretion" in deciding not to place the minor with the relative. (Id . at p. 1030, 111 Cal.Rptr.2d 243.)
The appellate court in Cesar V. first held that the relative placement preference applied, even after termination of reunification services, because a new placement became necessary. (Cesar V. , supra , 91 Cal.App.4th at p. 1033, 111 Cal.Rptr.2d 243.) Thus, the juvenile court still had the power and duty to make an independent placement decision under section 361.3, *852 rather than reviewing the agency's decision for abuse of discretion. (Cesar V. , at p. 1033, 111 Cal.Rptr.2d 243.)
Here, the minor's foster parents were interested in adoption so there was no need to make a change in placement, which would have triggered the post-reunification preferential consideration of relative placement. Moreover, father did not challenge the failure to place the minor with the paternal grandmother, present evidence and argument, or request a ruling on the matter. Nor did father or the paternal grandmother request a hearing regarding placement with the paternal grandmother. Thus, the occasion to hold a section 361.3 hearing was not presented to the juvenile court. And while Cesar V. found that the juvenile court, under the circumstances presented, was to independently assess the facts relative to placement, rather than deferring the agency's decision, it never found the juvenile court has a general duty to hold a relative placement hearing sua sponte.
Accordingly, we conclude father forfeited any contentions he had regarding the adequacy of the Department's assessment, or the juvenile court's consideration, of the paternal grandmother for placement under the requirements of section 361.3.
DISPOSITION
The orders of the juvenile court are affirmed.
We concur:
Raye, P.J.
Hoch, J.

Undesignated statutory references are to the Welfare and Institutions Code.

See footnote *, ante.