Filed 1/7/19 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CODY R., a Person Coming Under the Juvenile Court Law. | |
| | D073527 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. J512459F) |
| Plaintiff and Respondent, | ORDER MODIFYING OPINION **NO CHANGE IN JUDGMENT** |
| v. | |
| SHAUNA R., | |
| Defendant and Appellant. | |
| In re SHAUNA R. on Habeas Corpus. | D074328 (Super. Ct. No. J512459F) |

THE COURT:

It is ordered that the opinion filed December 17, 2018 be modified as follows:

On page 5, the first sentence of the third full paragraph that begins with "The Agency filed a section 300 petition," delete the words "the NREFM" and insert "another NREFM" so that the sentence reads:

> The Agency filed a section 300 petition on January 20 and detained him with another NREFM.

**There is no change in judgment.**

IRION, Acting P. J.

Copies to:  All parties

Filed 12/17/18 (unmodified opinion)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re CODY R., a Person Coming Under the Juvenile Court Law. | D073527 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SHAUNA R., <br><br> Defendant and Appellant. | (Super. Ct. No. J512459F) |
| In re SHAUNA R. <br> on Habeas Corpus. | D074328 <br><br> (Super. Ct. No. J512459F) |

CONSOLIDATED appeal from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge, and petition for writ of habeas corpus. Appeal dismissed; Petition denied.

Shauna R. appeals from an order terminating parental rights to her son, Cody R., under Welfare and Institutions Code section 366.26.[1] She contends the order terminating parental rights must be reversed because the San Diego County Health and Human

---

1    Further unspecified statutory references are to the Welfare and Institutions Code.

Services Agency (Agency) did not give preferential consideration to relatives when determining Cody's placement. After considering the parties' supplemental briefing on the issue of standing, we conclude that Shauna does not have standing to appeal the order terminating parental rights on the ground the Agency did not give preferential placement consideration to Cody's relatives. We therefore dismiss the appeal.

Shauna has also filed a petition for writ of habeas corpus asking this court to vacate the dispositional findings and orders and the order terminating parental rights. In an affidavit, Shauna asserts that prior to the June 2017 dispositional hearing she identified several family members who wanted Cody to live with them but the social worker told her that Cody would not, and could not, be moved from his foster home. Shauna argues that in placing Cody in a concurrent planning home instead of with a relative, the social worker misstated and misapplied the law governing the relative placement preference.

After receiving an informal response from the Agency, we issued an order to show cause. The parties have filed a return and a traverse, which we have now considered along with briefing and a review of the exhibits. We conclude that a petition for writ of habeas corpus may be filed in dependency cases only in limited circumstances not present here. We therefore deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Cody R., who is now five years old, is a son of Shauna R. and C.R. (together, parents). In August 2013, the Agency detained six-week-old Cody and four of his older siblings in protective custody due to severe neglect. The parents were convicted on related criminal charges of willful cruelty to a child. Shauna and C.R. regained custody

2

of the children in January and February 2015. The juvenile court terminated jurisdiction in September 2015.

Shortly before Christmas 2016, the children's former court-appointed special advocate (CASA) visited the family, which by then included another son and an infant daughter. The CASA observed that three-year-old Cody, who had been a "chunky" baby, was severely underweight, weak and lethargic. His extremities were purple. The CASA, a former paramedic, said Cody appeared to be near death and advised the parents to take him to the emergency room.

Cody was barely responsive when he arrived at the hospital several hours later. He was significantly malnourished. At three-and-a-half, Cody weighed 21.6 pounds, which was less than he had weighed at his last doctor appointment shortly after his second birthday. Bruises and abrasions on Cody's face, back, and legs were concerning for nonaccidental trauma.

During his hospitalization, Cody gained almost five pounds in less than five days. There was no other cause of failure to thrive other than malnutrition and neglect. Cody was severely neurologically delayed due to psychosocial and nutritional deprivation. Physicians characterized the parents' treatment of Cody as "essentially starvation" and advised the social worker that Cody would be at risk of death if returned home.

In foster care, Cody displayed extreme food seeking behaviors, which was "textbook behavior" for children who had been food deprived. Cody was provided services including Failure to Thrive Clinic, Speech Therapy, Physical Therapy, Trauma Therapy, and developmental support services.

The Agency detained Cody's siblings in protective custody in March 2017, when Shauna and C.R. were arrested on charges of felony child cruelty and held without bail.[2] Cody's baby sister was placed with him in foster care. The older siblings were very guarded when first removed from their parents. They later disclosed the parents said the entire family would go to jail if they talked about what had happened in the home.

The eldest sibling, C.R., Jr., said the parents did not feed Cody and would make him watch while the others ate. The parents locked the kitchen cabinets to prevent Cody from eating at night. C.R., Jr. explained that he and his siblings left food on the ground for Cody but the mice would eat it. Cody was so hungry he ate his feces from his diaper. He was not allowed to play with toys. He was not allowed out of the bedroom and had to stay in bed all day. C.R., Jr. said the parents made him stay home with Cody to avoid having Cody be seen in public. The three oldest children reported that the parents hit all the children, leaving marks and bruises, and encouraged them to hit each other and Cody.

On June 2, 2017, at the contested jurisdictional and disposition hearing, the juvenile court found that Cody was a child described by section 300, subdivisions (b) [neglect] and (e) [severe physical abuse of a child under five years of age]. None of the parties raised the issue of Cody's placement with a relative. The court removed Cody from the care and custody of his parents, bypassed reunification services, and set a section 366.26 hearing. The court advised the parents of their right to appeal but failed to

---

[2]    In a plea deal, the parents pleaded guilty to felony child abuse and were sentenced to four years in state prison. The district attorney obtained an order prohibiting the parents from having any contact with Cody for three years, and later sought a 10-year restraining order.

4

inform them that proper review of an order setting a section 366.26 hearing was by way of writ under California Rules of Court, rule 8.452.[3]

Shauna nevertheless signed a notice of intent to file a writ petition on June 2, which was filed on June 7. After review, however, her attorney notified Shauna and this court that a writ petition under rule 8.452 would not be filed because there were no viable issues for review. This court dismissed the matter on July 10, 2017.

*Cody's Placement History and Search for Relatives Interested in Placement*

Cody was hospitalized from December 24 to 29, 2016. At a team decision meeting in January 2017, Shauna and C.R. said there were no relatives available to care for Cody. The parents agreed to place him with a nonrelative extended family member (NREFM) under a voluntary safety plan and asked the Agency to consider placing Cody with their employers and friends, the B.'s. The Agency began an evaluation of the B.'s home, but the B.'s withdrew their names from consideration for placement prior to the dispositional hearing.

The Agency filed a section 300 petition on January 20 and detained him with the NREFM. On January 27, the social worker placed Cody in a concurrent family home with his current caregivers, who had an approved adoption home study.

During Cody's hospitalization, Aunt B., who was married to Shauna's brother (Uncle N.), visited Cody while a social worker was present. Aunt B. was reluctant to get involved in Cody's case. She told the social worker she did not understand how the

---

[3] Further unspecified rule references are to the California Rules of Court.

parents could have ignored Cody's condition. At a court hearing, Shauna confronted Aunt B. and demanded she retract her statement. When Aunt B. refused, Shauna said, "[Aunt B. is] never to see Cody again."

On February 2, the social worker sent letters to nine relatives, including Uncle D. and Uncle N., asking if they were interested in caring for Cody. The letter advised the relatives that if they did not come forward prior to the dispositional hearing, "the opportunities for placement in relative care may diminish as the child's case progresses."

In March, the social worker contacted Shauna to review the Agency's dispositional recommendations to bypass services and set a section 366.26 hearing. Shauna did not want to meet with the social worker and did not provide any concurrent placement recommendations for Cody.

On May 5, the social worker met with Cody's maternal grandmother and grandfather, Aunt B., and Aunt V., who were concerned about the children's welfare. The family advised against ever returning the children to Shauna's care. The grandmother said Shauna's behavioral issues dated back to early childhood. Shauna had been diagnosed with borderline personality disorder with narcissism and rage. The family was afraid of her and had distanced themselves from her. Shauna had a history of filing false accusations of abuse against family members. The day after Uncle D. and his girlfriend met with the social worker, child welfare services received a report alleging they did not have electricity in the home, which was not true.

After the case was referred to a section 366.26 hearing, a new social worker was assigned to the case. In August, in response to Shauna's inquiry why the case was in

6

adoptions while there was an appeal pending, the social worker said Shauna's writ petition had been dismissed on July 10 and advised her to contact her attorney. The social worker explained that the Agency had the authority to make placement decisions on Cody's behalf. They had tried to identify relatives and NREFMs for placement but did not find anyone willing to provide long-term care for Cody.

In response to Shauna's further telephone calls and letters, the social worker sent another email, stating in relevant part: "*Cody is a dependent of the Court and because of that you no longer have a say in where your son is placed. The Agency many times asks parents for ideas of family members or family friends . . . . This does not mean the parents are making the decision of where your* [sic] *child is placed but rather giving ideas of individuals that can be assessed if they are able to provide a safe home and protect the children from further abuse or neglect. . . . The decision for placement is always with the Agency and/or the Courts. Cody is in a home where he is thriving. . . . We have no intention of moving Cody from this home*."

*Section 366.26 Hearing*

The section 366.26 hearing was held on December 13, 2017. The social worker reported that Cody had been living with his current caregivers since January 2017. Cody looked to his caregivers to meet his emotional and physical needs. He was healthy and was starting to reach age-related developmental expectations. His caregivers wanted to adopt him and had an approved home study. Cody referred to his foster parents as "mommy and daddy." When asked to identify his family, Cody described his foster parents, his baby sister, and two dogs.

7

Shauna testified that she and Cody had a strong bond. Before she was arrested, Cody enjoyed his visits with the family. During visits, they played, blew bubbles, and played ball. When Cody left, he would hug them and say, "I love you."

C.R. did not testify. The parents argued the beneficial parent/child and sibling bond exceptions to termination of parental rights existed. Neither parent raised any issues concerning Cody's placement.

The juvenile court observed that Cody, who was then four years old, had spent only one year in the care of his parents. During that year, the evidence showed that his parents tortured and nearly starved him to death. The court characterized Cody's relationship with his parents as a relationship of "terror, trauma, and fear" and found there were no exceptions to termination of parental rights. The court terminated parental rights and designated Cody's caregivers as his prospective adoptive parents.

DISCUSSION

I. *The Appeal*

A. *Overview*

Shauna argues the order terminating parental rights to Cody must be reversed because the Agency did not favorably consider any of Cody's relatives for placement throughout the proceedings, culminating with the section 366.26 hearing. She argues the Agency's failure to do so was prejudicial because the juvenile court may have placed Cody with relatives had it properly applied the relative placement preference. Shauna does not advance any claim that the juvenile court erred in terminating her parental rights

8

or that the outcome of the section 366.26 hearing would have been different had Cody been placed with relatives.

We directed the parties to file letter briefs addressing the issue of whether Shauna has standing to appeal the order terminating parental rights in view of *In re K.C.* (2011) 52 Cal.4th 231 (*K.C.*) and *In re A.K.* (2017) 12 Cal.App.5th 492 (*A.K.*).

Shauna contends she has standing because at trial she sought to preserve her parental rights and timely appealed from the adverse judgment. She contends the challenge to the placement orders advances her argument against terminating parental rights. Shauna posits that reunification with Cody remains a possibility because she did not receive an advisement of her right to file a writ petition challenging the dispositional orders and findings, including placement, and her challenges to Cody's placement predate the dispositional hearing at which the court bypassed reunification services. She asserts that her inability to challenge the dispositional findings and orders preserves her standing to challenge her son's placement at the section 366.26 hearing.

The Agency contends this court should dismiss Shauna's appeal for lack of standing. The Agency observes that Shauna has not had any contact with Cody since March 2017 and is prohibited from having any contact with him until at least 2020. She has not raised any challenges to the juvenile court's findings that Cody was likely to be adopted and that termination of parental rights would not be detrimental to him. The Agency argues that reversal of the placement order would not advance Shauna's interest in avoiding termination of parental rights.

B. *Shauna Does Not Have Standing to Appeal*

We reject Shauna's argument she has standing to appeal because the juvenile court did not advise her of the right to challenge the jurisdictional and dispositional findings and orders by writ. (See generally *In re Cathina W.* (1998) 68 Cal.App.4th 716, 722 [failure to advise of right to file a writ constituted good cause to allow parent to raise issues from the referral hearing on appeal from termination of parental rights].) Although the required writ advisement does not appear in the minute order,[4] Shauna signed a notice of intent to file a writ petition the day of the jurisdictional and dispositional hearing. The record shows she had actual notice of her right to file a writ and did in fact timely file the notice of intent to challenge the dispositional findings and orders. Any error by the court was therefore harmless.

In addition, Shauna's argument that reunification with Cody remains a possibility is frivolous. Any placement error at the dispositional hearing would not have affected the order bypassing reunification services and setting a section 366.26 hearing. The Legislature *requires* the juvenile court to bypass services in cases like this one involving a jurisdictional finding that the parent has inflicted severe physical harm on her child unless the court finds, by clear and convincing evidence, that reunification is in the child's best interest. (§§ 300, subd. (e), 361.5, subds. (b)(6)(C), (c)(2) & (f).) Because the evidence clearly showed that Cody would be at risk of serious physical harm or death if returned to Shauna's custody, the court did not make such a best interest finding. Thus,

_____

4       The juvenile court incorrectly advised the parents they had the right to appeal and if they decided to appeal, they were required to file a notice of appeal within 60 days. Review of an order setting a section 366.26 hearing is by writ. (Rule 8.452.) A notice of intent must be filed within a specified time period, usually within 7 days after the date of the order setting hearing. (See rule 8.450(e).)

10

the court would have bypassed services and set a section 366.26 hearing whether Cody was placed with a relative or in foster care.

"Whether a person has standing to raise a particular issue on appeal depends upon whether the person's rights were injuriously affected by the judgment or order appealed from. [Citation.] A person does not have standing to urge errors on appeal that affect only the interests of others. [Citation.] Accordingly, a parent is precluded from raising issues on appeal which do not affect his or her own rights." (*A.K., supra*, 12 Cal.App.5th at p. 499.) The California Supreme Court has held that "[a] parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*K.C., supra*, 52 Cal.4th at p. 238.)[5]

---

[5] In *A.K.*, the father challenged the termination order on the ground that the juvenile court failed to assess the grandmother's request for the child's placement. The reviewing court held that that father did not have standing because he could not establish that his rights and interest in *reunification* were injuriously affected by any failure to consider the grandmother's request for placement at the 366.26 hearing. (*A.K., supra*, 12 Cal.App.5th at p. 499.)

In holding that a parent lacks standing to appeal an order terminating parental rights where his rights and interest in *reunification* were not injuriously affected by the failure to consider relative placement, *A.K.* arguably disregards the California Supreme Court's holding that a parent has standing to appeal where he can show that the reversal

11

Shauna contends her argument concerning Cody's placement are challenges that advance her argument against terminating parental rights. She contends that, unlike the parent in *K.C.*, she argued at the section 366.26 hearing that the beneficial parent/child exception existed. Shauna overlooks the fact she does not challenge on appeal the court's finding there were no exceptions to termination of parental rights. She alludes to the possibility that if Cody had been placed in the care of a relative, the relative would not have been able to adopt and the court would have ordered a permanency plan of guardianship, thus preserving Shauna's parental rights. Speculation about a hypothetical situation is not sufficient to support standing. (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1359 [a highly speculative interest does not meet the standing requirements].)

Even if Shauna had standing to appeal the order terminating parental rights on the ground the Agency did not meet its statutory obligation to give preferential treatment to relatives, we would reject her claim. The record shows that in January 2017, Shauna and C.R. told the social worker there were no relatives available to care for Cody. They agreed to place him with a nonrelative extended family member (NREFM) and asked the

of the placement order *advances the parent's argument against terminating parental rights*. (*K.C., supra*, 52 Cal.4th at p. 238, italics added.) A parent's interest in reunification is distinct from her interest in avoiding termination of parental rights. We are thus disinclined to read *A.K.* as stating a broad rule that a parent whose reunification services have been terminated has no standing to appeal placement orders.

Agency to evaluate their friends, the B.'s, for placement. The Agency agreed, but the B.'s withdrew their names from consideration for placement prior to the dispositional hearing. The Agency cannot be faulted for the B.'s decision.

The record belies Shauna's claim that Aunt B., who was married to Shauna's brother Uncle N., came forward to ask for Cody's placement before the dispositional hearing. During Cody's hospitalization Aunt B. appeared reluctant to become involved in Cody's case. Instead of promoting placement with Aunt B., Shauna became angry and said Aunt B. would never see Cody again.

On January 27, 2017, the social worker removed Cody from the NREFM and placed him in a concurrent family home with his current caregivers. The record permits the reasonable inference the Agency did so because the NREFM was not able to offer Cody a permanent placement.

In February, the social worker sent letters to nine relatives, including Uncle D. and Uncle N., asking if they were interested in caring for Cody. The record supports the reasonable inference that Uncle D. expressed an interest in Cody's placement because the social worker met with him and his girlfriend. However, the day after the meeting child welfare services received a report alleging Uncle D. did not have electricity in his home, which was not true. According to Shauna's family, she had a history of making false claims of abuse against her siblings and their spouses. The family met with the social worker, who was continuing to look for relative placement for Cody. Instead of expressing an interest in caring for Cody, family members said they had distanced themselves from Shauna because of her destructive behaviors and warned against

13

returning any of the children to her care.  Notably, the relatives did not care for Cody during his prior dependency case.  Cody was in a foster care home from age six weeks to the day before his first birthday.  That placement failed because Shauna became very aggressive and threatened to burn down the foster care home.

In March, the social worker contacted Shauna, who refused to meet with her or to provide any recommendations for Cody's placement.  Shauna did not raise the issue of placing Cody with a relative at any time during Cody's dependency proceedings.  Thus, the record does not support her claims there were relatives who were willing to provide a home to Cody and the Agency failed to apply the relative placement preference.  In not bringing the placement issue to the juvenile court's attention at any time during Cody's dependency proceedings, Shauna has forfeited the issue on appeal.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222 [a party forfeits the right to claim error as grounds for reversal on appeal when she fails to raise the objection in the trial court].)

Shauna's appeal is without merit.

## II.  *Writ of Habeas Corpus*

A.  *Overview*

Shauna contends a petition for writ of habeas corpus is the proper vehicle to present claims of error supported by evidence not included in the appellate record.  She maintains that her petition for writ of habeas corpus (petition) is her first chance to present this claim of error because she was not afforded the opportunity to prepare and file a writ petition after referral to the section 366.26 hearing at the dispositional hearing.  Shauna states if she could have filed a writ petition after the dispositional hearing, she

14

would have argued the social worker misled her about Cody's placement, and misstated and misapplied the law governing the relative placement preference.

Shauna asserts that prior to the June 2017 dispositional hearing, she identified several family members who wanted Cody to live with them, including Cody's uncle (Uncle D.), his aunt by marriage (Aunt B.), and his great-grandmother (Grandma T.). She asks this court to vacate the pertinent dispositional findings and orders,[6] and the order terminating her parental rights.

We issued an order to show cause to address an important and novel issue of law: whether habeas corpus may be utilized to present evidence to an appellate court that was not before the lower court in a dependency proceeding. (See *In re Robbins* (1998) 18 Cal.4th 770, 779.) We hold that habeas corpus in dependency proceedings is limited to claims of wrongful withholding of custody of the child, including lack of jurisdiction, and claims of ineffective assistance of counsel. We disapprove the use of a petition for writ of habeas corpus in dependency cases to challenge a dependent child's placement. Section 361.3 or section 388 provides an adequate and far more timely means to bring new evidence concerning the child's placement to the attention of the juvenile court.

B. *Habeas Corpus Is An Extraordinary Remedy of Limited Scope*

In dependency proceedings, habeas corpus has long been limited to claims of (1) entitlement to physical custody of a child where custody has been wrongfully

---

6    As we discussed, *ante*, at p. 11, any placement error at the dispositional hearing would not have affected the order bypassing reunification services and setting a section 366.26 hearing, and therefore complete reversal of the dispositional findings and orders is not an appropriate remedy.

15

withheld, or (2) ineffective assistance of counsel.  (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 866 (*Alexander S.*); *In re Richard M*. (1975) 14 Cal.3d 783, 789; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1658-1659, 1667.)  Shauna contends habeas corpus should also be an appropriate vehicle to bring to the appellate court's attention evidence that was not before the trial court.  We address each of these three potential bases for habeas relief.

1.  *Right to Physical Custody*

There are various subcategories of entitlement to physical custody of a child. (*Alexander S., supra*, 44 Cal.3d at p. 866.)  A writ of habeas corpus may be used to enforce an existing right to physical custody established by prior order or to determine physical custody in the absence of any previous custody order.  A parent may bring a habeas corpus action to protect a child from imminent danger.  A natural parent lacking physical custody may bring an original action in habeas corpus where the parent's consent to an adoption was required but not obtained.  Finally, habeas corpus may be brought to collaterally attack a prior child custody order where the court issuing the prior order lacked jurisdiction.  (*Alexander S.*, at pp. 866-867, citing *In re Richard M., supra*, 14 Cal.3d 783; *In re Croze* (1956) 145 Cal.App.2d 492, 495; *In re Wren* (1957) 48 Cal.2d 159, 163; *In re Dowell* (1935) 4 Cal.App.2d 688, 689; *In re Reyna* (1976) 55 Cal.App.3d 288, 294; *Ex Parte Barr* (1952) 39 Cal.2d 25, 27-28.)

Shauna claims a petition for writ of habeas corpus is appropriate because the state placed Cody with foster parents who wish to adopt him and in doing so, violated the statutory preference for relative placement.  She does not assert under any theory that *she*

16

is being wrongfully denied her right to physical custody of Cody, who was removed from her care on an unchallenged finding of substantial detriment. Thus, this case does not fall within any of the subcategories listed in *Alexander S*. and Shauna is not entitled to assert a claim of habeas corpus on this ground. We decline to create a new subcategory to allow *a parent* to assert that custody was wrongfully withheld from the child's relative.[7] As Shauna acknowledges, her claim concerns the application of section 361.3, which is a statutory issue, not a constitutional one. Habeas corpus extends to correct errors of a fundamental jurisdictional or constitutional type only. (*In re Harris* (1993) 5 Cal.4th 813, 828; cf. *In re Arturo A*. (1992) 8 Cal.App.4th 229, 238 [as a general rule, to determine whether a claim for reversal may be based on ineffective assistance of counsel, one must review the issue in litigation to determine whether the right threatened is fundamental].)

2. *Ineffective Assistance of Counsel*

Nor do we believe Shauna has stated a claim to relief based on ineffective assistance of counsel, the other accepted use of habeas corpus in a dependency proceeding. It is well settled that a litigant seeking habeas relief must " 'state fully and with particularity the facts on which relief is sought.' " (*In re Reno* (2012) 55 Cal.4th 428, 482 (*Reno*), quoting *People v. Duvall, supra*, 9 Cal.4th at p. 474.) The petitioner

_____

[7]    See generally, *Moore v. City of East Cleveland, Ohio* (1977) 431 U.S. 494, 503-505 [recognizing that *removal* of a child from a relative's care may merit constitutional protection].)

bears a heavy burden initially to plead sufficient grounds for relief. (*In re Martinez* (2009) 46 Cal.4th 945, 955.) "[T]his pleading requirement logically applies to explaining why a specific claim is cognizable in the first place." (*Reno*, at p. 482.) To assert a claim of ineffective assistance, a petitioner must allege that the performance of trial or appellate counsel fell below an objective standard of reasonableness under prevailing professional norms and was therefore deficient. He or she must also claim there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694; *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1407-1408.)

Shauna makes no explicit assertion that she was denied effective assistance of counsel, and we do not think her petition can be fairly read as offering any cognizable habeas claim on that ground. Although the Agency purports to respond to what it characterizes as Shauna's "vague assertions of ineffective assistance of counsel," it refers to a single citation in her petition: "*In re Arturo A*. (1992) 8 Cal.App.4th 229, 243 [proof of ineffective assistance of counsel commonly goes beyond the existing record]." Moreover, when the Agency's response sought to offer affidavits from Shauna's trial counsel and trial counsel's supervising attorney disclosing confidential communications from Shauna, allegedly in response to her claims of ineffective assistance, Shauna objected, moved to strike the affidavits, and denied making an ineffective assistance claim. We take her at her word.[8]

---

8      We also grant her motion to strike the affidavits.

18

3. *Evidence Outside the Appellate Record*

Finally, we examine Shauna's argument that a petition for habeas corpus may be used to present a claim of error that is supported, in pertinent part, by evidence not included in the appellate record. In other words, Shauna seeks to use a habeas petition to present a claim in this court that she did not present in juvenile court while represented by competent counsel. In support of her theory, Shauna cites cases referring to the need to present proof that goes beyond the existing appellate record. However, those cases concern claims of ineffective assistance of counsel, which as we have indicated is not presented here. (*Adoption of Michael D*. (1989) 209 Cal.App.3d 122, 126, superseded by statute on another point, as noted in *In re Mario C*. (1990) 226 Cal.App.3 122, 134; *In re Jessica Z*. (1990) 225 Cal.App.3d 1089, 1101; cf. *In re Arturo A., supra*, 8 Cal.App.4th, at p. 243.) Shauna has not cited, and we have not independently located, any authority permitting habeas in an adoption-related action that does not involve a claim of wrongfully withheld custody or ineffective assistance of counsel.

" '[H]abeas corpus is an extraordinary, *limited* remedy against a presumptively fair and valid final judgment.' " (*Reno, supra*, 55 Cal.4th at p. 450.) "This limited nature of the writ of habeas corpus is appropriate because use of the writ tends to undermine society's legitimate interest in the finality of its criminal judgments, a point this court has emphasized many times." (*Id*. at p. 451.) The California Supreme Court has applied this principle to adoption-related cases. (*Alexander S.*, *supra*, 44 Cal.3d at pp. 867-868 ["Out of concern for the welfare of children in adoption actions, we hold that habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-

19

related action where the trial court had jurisdiction to render the final judgment"]; accord, *Lehman v. Lycoming County Children's Services Agency* (1982) 458 U.S. 502, 513-514 [federal habeas in child custody disputes prolongs uncertainty for children and is disallowed].)

More importantly in this context, a writ of habeas corpus is not available where there is an alternative remedy. (*Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 415-416.) Generally, because of the ongoing nature of dependency cases, there is an alternative means to bring new evidence to the timely attention of the juvenile court. Section 388 is often used in dependency proceedings to seek modification of a prior placement order. (See also *Isabella G.* (2016) 246 Cal.App.4th 708, 723 [where the agency disregarded a relative's timely request for placement, the relative is entitled to a § 361.3 hearing without having to file a § 388 petition].)

Shauna claims that if she had the prior opportunity to file a writ petition under rule 8.452, she would have raised the issue of relative placement and therefore her current petition for writ of habeas corpus is properly before this court. Her claim is without merit. Shauna signed a notice of intent to file a writ petition on the day of the dispositional hearing. In the absence of any claim of ineffective assistance of counsel, we presume counsel competently performed her duties. Even were we to assume, as Shauna argues, she did not receive either the July 7, 2017 letter from her attorney stating there were no issues for writ review or the July 10, 2017 letter from this court dismissing the writ petition under rule 8.452, Shauna was informed of the dismissal of her appellate

20

proceedings on August 10, 2017.  The section 366.26 hearing was not heard until December 13, 2017.  She had ample time prior to the section 366.26 hearing to bring any claim of new evidence or change in circumstance to the attention of the juvenile court by filing a section 388 petition for modification of any placement order.  Similarly, Shauna cannot use a petition for writ of habeas corpus to submit evidence to this court that could have been, but was not, presented by competent counsel to the juvenile court at the section 366.26 hearing.  (*Alexander S.*, *supra,* 44 Cal.3d at pp. 867-868 [habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment].)

## DISPOSITION

The appeal is dismissed.  The petition for writ of habeas corpus is denied.


DATO, J.

WE CONCUR:



IRION, Acting P. J.



GUERRERO, J.


21