Filed 7/13/21  M.W. v. Superior Court CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| M.W. et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br> Respondent; <br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Real Party in Interest. | D078707 <br><br> (San Diego County Super. Ct. Nos. J519180C, D) |

ORIGINAL PROCEEDINGS in mandate after a reference to a Welfare and Institutions Code section 366.26 hearing.  Rohanee Zapanta, Judge. Petitions denied.

M.W., in pro. per., for Petitioner.

No appearance by Respondent.

Office of County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

M.W. (Mother) seeks writ review of orders entered after a jurisdiction and disposition hearing in the juvenile dependency proceeding involving her minor children, M.W., Jr., and I.W. In those orders, the juvenile court, inter alia, terminated reunification services and referred the matter for a selection and implementation hearing pursuant to Welfare and Institutions Code section 366.26.[1]

After their initial removal in 2019, Mother participated in reunification services that resulted in a short-lived return of the children to Mother's care as part of a trial visit following the 12-month review hearing. However, her relapse into drug use and failure to comply with her case plan necessitated the removal of the children. The children were removed from Mother's care for a second time following the filing of a supplemental petition under section 387.

Mother's contentions in her writ petition and supplemental petition appear to be largely premised on her belief that because the children were residing with her at the time of their second removal, the original dependency proceeding had concluded and the section 387 petition initiated a new proceeding. As we explain, this belief is inconsistent with the law and Mother's contentions do not support her prayer for extraordinary relief. Accordingly, we deny the petitions.

---

[1]    All further statutory references are to the Welfare and Institutions Code.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

In April 2019, the San Diego County Health and Human Services Agency (Agency) petitioned the juvenile court under section 300, subdivision (b), on behalf of then two-year-old M.W., Jr., and 10-month-old I.W. The Agency alleged that Mother and Mi.W. (Father) (collectively, the parents) were stopped while driving a stolen vehicle and had marijuana and methamphetamine paraphernalia in close proximity to their children, who were passengers in the vehicle. Both parents were arrested based on outstanding felony arrest warrants.

At a detention hearing in April 2019, the juvenile court found the Agency made a prima facie showing that the children were persons described by section 300, subdivision (b). It ordered the children detained in out-of-home care, directed that reunification services be provided to the parents, and allowed for supervised visits as permitted during the parents' incarceration.

Following a guilty plea, Mother was released from custody and began an inpatient substance abuse treatment program. During that program, Mother made significant progress on her reunification case plan.

At the first jurisdiction and disposition hearing in July 2019, the court sustained the allegations under section 300, subdivision (b), removed the children from parental care, and ordered continued reunification services.

At the six-month review hearing the court ordered overnight visitation for the children with Mother, who had continued to progress in her case plan. Before the 12-month review hearing, the Agency relied on the parents' overall

---

[2]   "In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.)

3

progress to recommend that the children remain dependents of the court, that they be placed with parents, and that six months of family maintenance services be provided. The court adopted those recommendations at the 12-month review hearing in August 2020.

The parents, however, began to struggle with case plan compliance. Mother repeatedly ignored Agency requests to submit to drug testing. Mother also ignored some calls and text messages from the social worker. The Agency received and investigated several reports of abuse of the children. Concern for the children's safety culminated in an incident in December 2020, when Mother suffered a stillbirth at home. After she arrived at the hospital, Mother told staff she did not know she was pregnant and admitted to a treating physician that she had been using methamphetamine almost daily for several months. Mother asked the physician if the information she provided was confidential, but the physician informed Mother that she had a mandatory duty to report the information. Mother then refused additional testing and quickly left the hospital against medical advice.

After learning of the incident, the Agency attempted to investigate but the parents twice fled with the children when social workers approached them. With the support of law enforcement, the social workers were able to take custody of the children and return them to their foster home. Thereafter, Mother provided the Agency with drug-test results that appeared to be falsified. Mother also provided a phone number for her purported 12-step program sponsor, but a social worker discovered the phone number was disconnected. Mother denied any recent drug use, but also continuously refused to submit to a drug test.

The Agency then filed supplemental petitions under section 387, alleging that the placement with the parents had not been effective and

recommending that the children be placed with their previous foster caregivers.[3]  At a detention hearing the next day, the juvenile court found the Agency had made a prima facie showing that the allegations alleged in the section 387 petition were true and ordered the children detained in their foster home.

Thereafter, Mother continued to fail to submit to drug testing.  During an interview, she claimed that drug testing would violate her constitutional rights.  Mother also claimed she had filed a lawsuit against the Agency and the social workers.

In a subsequent addendum report, the Agency reported that Mother continued to fail to submit to drug testing and continued to deny using any controlled substances.  The Agency received a report from the medical examiner that disclosed that the stillborn baby tested positive for methamphetamine.  The examiner informed the Agency that the positive test result confirmed that Mother had been using methamphetamine recently.  The examiner also opined that although Mother's drug use may have contributed to the baby's death, it was difficult to determine the precise causal relationship.  When confronted with this information, Mother denied using controlled substances and ultimately ended the phone call with the social worker.

The Agency opined that the parents had exhausted their 12 months of reunification services without success.  Relying on the toxicology report for the stillborn baby, the Agency concluded it was clear Mother was using

_____

[3]    A third petition was filed for the children's new baby sister, C.W., who was born during this dependency proceeding and before Mother's stillbirth. The proceedings regarding C.W. are not at issue in this writ petition, but are instead the subject of a separate appeal.  (Case No. D078699.)  We decline Mother's request to consolidate the proceedings.

5

methamphetamine but she continued to deny her use and refused to submit to testing. Based on her unwillingness to cooperate with the Agency and aggressive responses to any attempts to facilitate services, the Agency recommended that the court terminate reunification services and set a selection and implementation hearing pursuant to section 366.26.

At the jurisdiction and disposition hearing, Mother's counsel did not make an opening statement, had no questions for the social worker, and offered no affirmative evidence. After hearing argument from counsel, the juvenile court adopted the Agency's recommendations. The court relied heavily on Mother's continued drug use and its effect on her ability to protect the children.

Both Mother and Father filed a notice of intent to file a writ petition pursuant to rule 8.452 of the California Rules of Court. However, Father's counsel thereafter informed the court that he could find no viable issues for review and, accordingly, this court dismissed Father's petition.[4]

DISCUSSION

Mother filed both a California Rules of Court rule 8.452 extraordinary writ petition and a supplemental petition, which she titled as a petition for writ of habeas corpus. Her supplemental petition includes several claims challenging the court's orders following the jurisdiction and disposition hearing. As this court explained in *In re Cody R.* (2018) 30 Cal.App.5th 381, the petition for writ of habeas corpus is an "extraordinary remedy of limited scope" in juvenile dependency proceedings, typically limited to claims to a right to physical custody of the children on specific grounds and claims of

---

[4]    For this reason, the discussion of the factual and procedural background in this opinion does not significantly address the case proceedings as they relate to Father.

6

ineffective assistance of counsel. (*Id.* at pp. 392-394.) Additionally, a writ of habeas corpus is not available where there is an alternative remedy. (*Id.* at p. 395.)

Although Mother includes a claim of ineffective assistance of counsel in her supplemental petition, her other contentions are not cognizable in a petition for writ of habeas corpus. However, since all of these contentions may be reviewed as part of this rule 8.452 writ proceeding, we decline to dismiss her petition as improper and instead treat the filing as a supplemental petition under rule 8.452.[5]

In both the petition and supplemental petition, Mother asserts the court erred in terminating reunification services and setting a section 366.26 hearing without providing additional services. In her original petition, Mother contends that the Agency's "continued interference" after the 12-month review hearing was a violation of her constitutional rights, that the Agency failed to make reasonable efforts to assist Mother in reuniting with her children, and that a social worker violated her constitutional rights by visiting her home, questioning the family, and seeking the assistance of law enforcement to remove the children from the home. In her supplemental petition, she again asserts that the juvenile court abused its power by removing the children after they were returned to her care and that her case plan was not reasonable.

Although Mother's petitions are not entirely clear, the contentions asserted therein seem to be premised on her belief that the juvenile court

---

[5]    For similar reasons, we decline the Agency's contention that we should dismiss or summarily deny Mother's petition due to her procedural errors and ambiguous arguments. Instead, we construe her petition liberally and consider her arguments to the extent we can ascertain cognizable claims. (Cal. Rules of Court, rule 8.452 [writ petitions are liberally construed].)

either lacked jurisdiction or that the court and the Agency failed to follow the proper procedures that apply after the filing of an *initial* petition.  Here, however, the juvenile court's orders followed the filing of a *supplemental* petition.  Thus, Mother's reliance on law and procedures involving initial petitions is misplaced.

The relevant law vested the juvenile court in this proceeding with continued jurisdiction following the 12-month review hearing and the record shows that both the court and the Agency acted appropriately and fulfilled their continuing duties to the children and Mother.  At the 12-month review hearing, the juvenile court found by clear and convincing evidence that the conditions justifying the initial assumption of jurisdiction under section 300 still existed.  Accordingly, the court ordered that the children be continued as dependents of the court and that parents receive family maintenance services.  The juvenile court acted within its discretion in continuing the case for an additional six months at that hearing pursuant to section 366.21, subdivision (g).  Because the children were in the care of parents at that time, ordering family maintenance services was appropriate.  (*Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 165-166 (*Carolyn R.*).)  Most importantly, while the Agency was providing those family maintenance services, the dependency proceeding continued and the juvenile court retained jurisdiction.

Thus, the filing of the section 387 supplemental petition did not initiate a new proceeding, but was a continuation of the existing proceeding.  This distinction affects the scope of services that may be offered to parents.  "When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to ' "square one" ' with regard to reunification efforts." (*Carolyn R.*, *supra*, 41 Cal.App.4th at p. 166.)  "Although section 361.5,

8

subdivision (a) speaks in terms of granting reunification services 'whenever' a child is removed from the parent's home, the cases have uniformly held that removal of a child from a parent's home by way of a section 387 petition does not entitle the parent to a new round of reunification services under section 361.5. Once the reunification 'clock' starts ticking upon the initial removal on a section 300 petition, it continues to run despite subsequent placement with a parent during the dependency." (*D.T. v. Superior Court* (2015) 241 Cal.App.4th 1017, 1035.)

Following an order sustaining a section 387 petition, reunification services resume *only* if (1) the parent received less than 12 months of child welfare services, (2) the parent did not receive reasonable services, or (3) the case has passed the 12-month mark but there is a substantial probability the children will be returned within 18 months of the date when the children were originally removed. (*Carolyn R.*, *supra*, 41 Cal.App.4th at p. 166.)

None of those situations apply here. When the juvenile court sustained the section 387 supplemental petition in March 2021, the parents had received over 12 months of reasonable reunification services and nearly two years had passed since the children were first removed. Thus, the court had no obligation to order additional reunification services and Mother fails to make any showing that the court should have done so. Accordingly, Mother's claim that additional services should have been offered following the children's removal has no merit.[6]

---

[6] It is not clear if Mother is also seeking to challenge the reasonableness of the services provided before the supplemental petition was filed. To the extent she intends to make such a challenge, Mother forfeits her challenge by not pursuing an appeal of the juvenile court's prior appealable orders. (*In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1705.) Regardless, her petition does not demonstrate that the prior services—which were temporarily successful in reuniting Mother with the children—were unreasonable.

Mother raises additional challenges in her supplemental petition. She contends she was not provided notice of "the detention hearing," presumably the one held on December 24, 2020. The record shows, however, that Mother attended the hearing and was able to participate. If Mother is instead challenging the sufficiency of the notice of the initial detention hearing, she was also present at that hearing, which was continued twice to ensure her presence despite her incarceration. Given Mother's appearance at both hearings, we may reasonably presume that she was given actual notice or, alternatively, was not prejudiced by the purportedly insufficient notice. (See, e.g., *In re A.J.* (2019) 44 Cal.App.5th 652, 667 [requirement that an incarcerated parent either be present or waive his or her appearance is sufficient to ensure parent actually received notice].)

Mother also contends that the Agency failed to establish a sufficient basis for removing the children from her care and placing them in foster care. Our review of the record establishes that the trial court's findings are supported by substantial evidence.

"When a section 387 petition seeks to remove a minor from parental custody, the court applies the procedures and protections of section 361. [Citation.] Before a minor can be removed from the parent's custody, the court must find, by clear and convincing evidence, '[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody.' [Citations.] [¶] A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor[;] and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The

10

parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

We review the juvenile court's factual findings to determine whether they are supported by substantial evidence, adjusting our analysis to account for the clear and convincing standard of proof in the juvenile court. (*In re T.W., supra,* 214 Cal.App.4th at pp. 1161-1162; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005-1006.)

Here, the evidence clearly supports the juvenile court's conclusion that Mother was unable to properly care for her children and there was a substantial risk of harm were the children left in her care. Despite Mother's denials of drug abuse, the presence of methamphetamine in her stillborn baby and Mother's statements to a treating physician that she was regularly using methamphetamine establish that she was often under the influence while parenting the children. She repeatedly refused to submit to drug testing. On another occasion, she apparently falsified drug-test results in an attempt to mislead the Agency. Mother's drug abuse was not a new concern, but rather a continuation of her longstanding struggles with controlled substances that repeatedly prevented her from safely parenting the children.

Moreover, Mother's aggressive behavior, attempts to mislead the Agency, refusal to accept the assistance of social workers, and denials of her drug abuse supported a conclusion that the children could not be reasonably protected while remaining in her care. Even assuming the children had not yet been harmed, as Mother contends, the evidence established a clear potential for harm to the children that necessitated their removal from her care.

11

When the evidence is considered as a whole, Mother's repeated lapses into drug use, combined with her denials of that use and refusal to address the problem, provide a sufficient evidentiary basis to support the juvenile court's finding that Mother's conduct placed the children at substantial risk of serious physical harm. (*In re K.B.* (2021) 59 Cal.App.5th 593, 600-602.) Accordingly, we see no error in the juvenile court's findings.

Finally, Mother contends that her counsel was ineffective. "To assert a claim of ineffective assistance, a petitioner must allege that the performance of trial or appellate counsel fell below an objective standard of reasonableness under prevailing professional norms and was therefore deficient. He or she must also claim there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*In re Cody R., supra,* 30 Cal.App.5th at p. 394.) At most, Mother contends that her counsel's performance fell below the standard "by failing to raise objections to the sufficiency of [the] evidence, strategize or make any defensive argument, cross-examine[] social workers, provide the court with documentation favorable to his client, call any witnesses, and fail[ing] to inform client at review hearing of the right to file an appeal."

Beyond these general assertions, Mother provides no additional evidence to support her claim that her counsel was ineffective. In order to prevail on a claim of ineffective assistance of counsel on the basis that the counsel failed to investigate, call witnesses, or make certain arguments, the party raising the claim "must establish the nature and relevance of the evidence that counsel failed to present or discover." (*People v. Williams* (1988) 44 Cal.3d 883, 937.) Mother makes no such showing. Her conclusory assertions that counsel should have been a better advocate by making different arguments or providing better advice to her are insufficient to

establish a claim for ineffective assistance of counsel. (See, e.g., *In re Reno* (2012) 55 Cal.4th 428, 493 ["conclusory allegations without specific factual allegations do not warrant relief."].) Moreover, by failing to establish the relevance of any omitted evidence or argument, Mother fails to establish any prejudice from her counsel's alleged deficiencies.[7] Mother makes no showing that a different result was likely absent any alleged deficient performance by her counsel.

Considered altogether, the arguments in Mother's petition and supplemental petition do not demonstrate error by the juvenile court. Understandably, Mother disputes the outcome of the latest hearing and does not agree with the removal of her children. However, under our deferential standard of review, her petitions do not establish any error by the juvenile court that warrant extraordinary relief. Accordingly, we deny both petitions.

---

[7] Mother also includes a passing reference to her counsel's failure to advise her regarding her appellate rights, but fails to clarify which appealable order she is referencing and does not provide any evidence to support her assertion. We presume counsel's performance was effective and a party bears the burden of affirmatively establishing deficient performance, usually based on evidence beyond the record of the trial. (See, e.g., *In re Arturo A.* (1992) 8 Cal.App.4th 229, 243; *In re Cody R., supra,* 30 Cal.App.5th at p. 394; *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147 [applying strong presumption that counsel's conduct falls within the wide range of professional assistance].) Mother fails to make such a showing in regard to her claim that her counsel's advice regarding her appellate rights was insufficient. Similarly, Mother's reference to counsel's failure to obtain a certificate of probable cause, which typically is a procedure invoked in criminal proceedings following a guilty plea, appears to have no bearing on her appellate rights in this proceeding.

## DISPOSITION

The petitions are denied.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

DO, J.

14