Filed 8/12/22  In re V.R. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re V.R., a Person Coming Under the Juvenile Court Law. | B316643 (Los Angeles County Super. Ct. No. DK19274) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. HAILIE R., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Ser, Judge.  Dismissed in part; conditionally affirmed in part and remanded with directions.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant Hailie R.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

Hailie R. (Mother) appeals from the juvenile court's order terminating her parental rights over eight-year-old V.R. under Welfare and Institutions Code section 366.26.[1] Mother contends the juvenile court abused its discretion in denying the maternal grandmother's section 388 petition heard immediately before the hearing on termination of parental rights. The Los Angeles County Department of Children and Family Services (the Department) contends and we agree that because Mother did not argue at the hearing and does not assert on appeal that an exception to termination of parental rights applies, we must dismiss Mother's appeal of the order denying the section 388 petition for lack of standing.

Mother also argues, the Department concedes, and we agree the Department and the juvenile court failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and California law. We conditionally affirm and remand for the juvenile court and the Department to comply with the inquiry and notice provisions of ICWA and California law.

_____

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Referral, Dependency Petition, and Detention*

On August 28, 2016 the Department received a referral alleging Mother's boyfriend, Victor M., came home drunk and yelled at Mother because he was upset that she was eight months pregnant with their child.  While Mother was sitting on the bed with then-three-year-old V.R., Victor threw his shoe at Mother, hitting her on the shoulder.  In her interview with a social worker, Mother denied any verbal or physical altercation had occurred.  But Mother informed the responding police officers there were 10 prior unreported domestic violence incidents between Mother and Victor.

On September 27, 2016 the Department filed a non-detain dependency petition on behalf of V.R., alleging Mother and Victor engaged in domestic violence, including the August 28, 2016 incident; Victor abused alcohol and had a criminal conviction for driving under the influence of alcohol; and Mother failed to protect V.R. by allowing Victor to reside in the home.  At the detention hearing, the juvenile court found Rodney O. (Father) was V.R.'s presumed father and a non-offending parent.[2]  The court allowed V.R. to remain in Mother's custody and ordered the Department to provide family maintenance services.

On August 25, 2017 the juvenile court ordered removal of V.R. from Mother's physical custody after another incident in which Victor allegedly pushed Mother to the ground and slapped her face four times.  The social worker reported that Mother had

---

[2]    Father is not a party to this appeal.

3

allowed Victor to have unlimited access to V.R. and Abel M. (Mother's child with Victor)[3] despite court orders that granted Victor only monitored contact with the children. At the time of removal, V.R. was living with maternal grandmother Maria C. However, Maria's home was not approved for placement of V.R. because Maria's husband Alfredo C. had a conviction for child cruelty, which could not be waived. At the September 1, 2017 hearing, the juvenile court placed V.R. with Father.

B.    *The Jurisdiction and Disposition Hearing, and Subsequent and Supplemental Petitions*

At the October 13, 2017 jurisdiction and disposition hearing, based on Mother's no contest plea, the juvenile court sustained the allegations of domestic abuse, Victor's alcohol abuse, and Mother's failure to protect V.R. The court declared V.R. a dependent of the court and placed her in Father's home under the Department's supervision.

However, after Mother reported on March 1, 2018 that V.R. disclosed that someone called "'Grandpa Bear'" had touched her private parts, on March 12 Father told the social worker he no longer wanted to have V.R. in his care because of Mother's false accusations (the social worker later concluded the allegations were unfounded). The Department placed V.R. with Maria. On September 4, 2018 the juvenile court sustained the allegations in a subsequent petition (§ 342) that Father was unwilling to provide ongoing parental care and supervision of V.R. The court later removed V.R. from Father's physical custody and released

---

[3]    Abel was born in October 2016. Mother's appeal involves only V.R.

4

her to Mother "conditioned upon Mother residing in the home of Maternal Grandmother."

After additional referrals on January 11 and February 11, 2019, on March 7, 2019 the Department filed a supplemental petition (§ 387) alleging Mother on multiple occasions left the children for days without notice to Maria, which violated the condition V.R. and Abel be released to Mother only if Mother and the children lived in Maria's home. Further, Mother allowed Victor to have unmonitored visits with Abel in violation of another court order. On May 9, 2019 the court sustained the allegations in the supplemental petition, set the matter for a disposition hearing, and ordered the Department to provide an update on possible placement of V.R. with Maria, with Alfredo not in the home.

C.    *Subsequent Events*

As discussed, V.R. (and at times Mother) lived with Maria during multiple periods beginning when V.R. was three years old. However, a March 2018 resource family assessment (RFA) of Maria's home concluded V.R. and Abel could not be placed in Maria's home because Alfredo failed to submit documentation that he had completed a program to address his 2007 willful cruelty conviction, and thus his request for a criminal waiver was denied. Alfredo also had a 1994 conviction for domestic violence, as to which there was an allegation Alfredo threatened to rape the victim and her one-year-old child upon Alfredo's release from custody. The Department reported that because the denial of the RFA had not been appealed, Maria could not submit another application for two years.

5

Following the May 9, 2019 order, a social worker contacted Maria regarding the prior RFA denial. Maria stated she wanted the children placed in her home, but she had to discuss with Alfredo whether he would be willing to leave the home; however, Maria never reported back to the social worker about Alfredo's position. On December 9, 2019 V.R. was placed in the home of a relative, Vanessa D.

At the January 23, 2020 18-month review hearing, the juvenile court found Mother had not made substantial progress with her case plan, and it terminated Mother's family reunification services and set a selection and implementation hearing.

On January 7, 2021 V.R. was placed with maternal great-aunt Joyce C. (and her husband, uncle Vincent C.) because Vanessa could no longer care for V.R. In February the Department reported Maria consistently visited V.R. V.R. enjoyed visits with Maria and wanted to live with her. In June 2021 the Department reported neither Mother nor Father contacted Joyce to arrange visits with V.R. Maria continued to regularly visit V.R. On June 2 the juvenile court gave the Department discretion to place V.R. with Maria if her RFA application received approval.

The June 2, 2021 report for the continued selection and implementation hearing stated the concurrent planning assessment update recommended adoption by Joyce and Vincent, who wanted to adopt V.R. V.R. liked living with Joyce and her family, but she missed Maria and preferred to reside with her. The Department reported Maria had successfully appealed the denial of her first RFA application, and she had submitted a

second RFA application. However, on August 4, 2021 Maria withdrew her RFA application.

D.    *Maria's Section 388 Petition*

On September 15, 2021 Maria filed a section 388 petition requesting placement of V.R. in her home with either adoption or legal guardianship, with unmonitored visits in the meantime. Maria stated V.R. lived in her home until she was three years old, and Maria "maintained consistent contact" with her. According to Maria, Joyce made false allegations that caused the juvenile court to limit Maria to monitored visits and Maria to withdraw her RFA application.

The Department recommended denial of Maria's section 388 petition. The social worker reported Maria had taken V.R. on one or more overnight visits without the Department's approval. Further, V.R. disclosed she did not like unmonitored visits with Maria because Maria would get mad and yell at her for getting her clothes dirty, celebrating holidays with Joyce and her family, and wearing clothes that were not purchased by Maria. V.R.'s therapist opined V.R. was doing well in her current placement and should not be moved.

E.    *The Section 388 and Selection and Implementation Hearings*

At the September 30, 2021 section 388 hearing, Maria stated she had been consistently present in V.R.'s life, she loved V.R., and she wanted V.R. to live in her home. Maria and V.R. had fun together and had a "great bond." In response, Vincent (who appeared by videoconference) stated V.R. "does show fear" of Maria and "is hesitant when it come to her grandma."

The Department argued it was not in V.R.'s best interest to grant the section 388 petition. Minor's counsel agreed, but noted that V.R. would prefer to live with Mother, and if not, then with Maria. V.R.'s third choice was to live with Joyce. However, there were no changed circumstances because the RFA for Maria had not been approved. And there was "volatility" in Maria's home, which would not be in V.R.'s best interest. Mother's counsel stated, "I have no direction regarding the grandmother's 388." The juvenile court denied Maria's section 388 petition, finding no changed circumstances and it would not be in V.R.'s best interest to remove her from Joyce's home and place her with Maria.

Following the section 388 hearing, the juvenile court proceeded to hold the selection and implementation hearing (§ 366.26). Minor's counsel stated no exception to adoption applied because Mother did not have a sufficient parental bond with V.R. However, minor's counsel requested a continuance to see if the "current caregivers will be willing to proceed with a legal guardianship" because V.R. wanted to continue having visits with Mother and Maria. Further, V.R. told minor's counsel "she still wants to be able to visit with [Mother] or see [Mother] and her grandmother," and she was "adamant in saying that she does not want to be adopted." Minor's counsel acknowledged she had "no basis to ask for, [or] the court to [find] an exception to terminat[ion of] parental rights or ordering an adoption." Mother's counsel stated without elaboration, "Mother would object to termination of parental rights." He also joined in the request by minor's counsel for a continuance to determine whether adoption was the appropriate plan. The court denied the request for a continuance, explaining, "I understand [minor's counsel] has concerns, but the goal is to provide permanency and

8

stability for [V.R.], and Mother has not been active in [V.R.'s] life, although [V.R.] does want to be with Mother."

The juvenile court found by clear and convincing evidence V.R. was adoptable and no exception to termination of parental rights applied. Mother timely appealed.[4]

---

[4] The Department contends Mother's challenge to the order denying Maria's section 388 petition should be dismissed because Mother did not specifically appeal that order. Mother's notice of appeal stated she was appealing the September 30, 2021 order for "[t]ermination of parental rights" and "planned permanent living arrangement." Mother did not specify she also was appealing the order denying the section 388 petition. However, we liberally construe the notice of appeal to encompass the order because Mother filed the notice of appeal without counsel, and the juvenile court denied Maria's section 388 petition on the same day the court terminated parental rights, within 60 days of when Mother filed her notice of appeal. (*In re Madison W.* (2006) 141 Cal.Ap.4th 1447, 1451 ["[W]e . . . liberally construe a parent's notice of appeal from an order terminating parental rights to encompass the denial of the parent's section 388 petition, provided the trial court issued its denial during the 60-day period prior to filing the parent's notice of appeal."].)

# DISCUSSION

A.  *Mother Does Not Have Standing To Appeal the Order Denying Maria's Section 388 Petition*

We agree with the Department that Mother lacks standing to appeal the order denying Maria's section 388 petition.[5] "Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*); accord, *In re J.Y.* (2018) 30 Cal.App.5th 712, 717.)

Mother contends she has standing to appeal the denial of Maria's section 388 petition requesting placement with a relative,

---

[5]  In addition, Mother forfeited her challenge to the juvenile court's denial of Maria's section 388 petition because Mother's counsel did not argue the petition should be granted, instead informing the court that he had "no direction regarding the grandmother's 388." (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."]; *In re Cody R.* (2018) 30 Cal.App.5th 381, 391 [mother forfeited claim of error by "not bringing the placement issue to the juvenile court's attention"]; *In re A.K.* (2017) 12 Cal.App.5th 492, 501 ["By failing to litigate [the relative placement issue] or request a ruling from the juvenile court, father failed to preserve the issue on appeal."].)

10

relying on *In re H.G.* (2006) 146 Cal.App.4th 1, 10 (*H.G.*) and *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054 (*Esperanza*), in which the Courts of Appeal concluded the parents had standing to appeal pretermination orders placing the children in foster care instead of with relatives.[6]  However, as the Supreme Court explained in *K.C., supra*, 52 Cal.4th at page 237 as to *H.G.* and *Esperanza*, "In both cases, the Court of Appeal concluded that parents whose rights had been terminated were aggrieved by, and thus *did* have standing to appeal, pretermination orders concerning their children's placement, because the possibility existed that reversing those orders might lead the juvenile court not to terminate parental rights."

   *K.C.* is directly on point.  There, the father appealed denial of the grandparents' section 388 petition requesting placement of minor K.C. in their home as well as the order terminating parental rights.  (*K.C., supra*, 52 Cal.4th at p. 235.)  However, the father did not offer in the juvenile court any argument against termination of his parental rights, and on appeal the "father limited his argument to the question of K.C.'s placement," asserting generally that if the placement order were reversed, the court should also reverse the order terminating parental rights.

---

[6]    In *H.G., supra*, 146 Cal.App.4th at pages 6 to 7 and 10, the court concluded the parents had standing to challenge the juvenile court's granting of a section 387 petition to place their child in foster care instead of with her grandparents.  In *Esperanza, supra*, 165 Cal.App.4th at pages 1050 to 1051 and 1054, the court concluded the mother had standing to appeal denial of a section 388 petition seeking to place her child with the maternal great-uncle and great-aunt instead of in a non-relative prospective adoptive home.

11

(*Ibid*.)  The Supreme Court held the father did not have standing to appeal the denial of the grandparents' section 388 petition, explaining, "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights.  This rule does not support father's claim of standing to appeal because he did not contest the termination of his parental rights in the juvenile court.  By thus acquiescing in the termination of his rights, he relinquished the only interest in K.C. that could render him aggrieved by the juvenile court's order declining to place the child with grandparents."  (*Id*. at p. 238.)

As in *K.C.*, Mother was not aggrieved because she did not argue in the juvenile court and does not assert on appeal any statutory exception to termination of parental rights.  Although Mother's counsel at the selection and implementation hearing objected generally to termination of parental rights, he did not argue that any of the statutory exceptions to termination applied.  "General objections are insufficient to preserve issues for review.  [Citation.]  The objection must state the ground or grounds upon which the objection is based."  (*In re E.A.* (2012) 209 Cal.App.4th 787, 790; accord, *In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.)  And on appeal Mother only argues in a conclusory way that "reversal advances mother's argument against terminating parental rights."

Mother therefore lacks standing to appeal the order denying Maria's section 388 petition.  (See *In re Cody R.* (2018) 30 Cal.App.5th 381, 390 [mother did not have standing to appeal her child's placement because she did not "challenge on appeal the court's finding there were no exceptions to termination of

parental rights"]; *In re Isaiah S.* (2016) 5 Cal.App.5th 428, 436 [mother did not have standing to raise relative placement issue on appeal because "placement with the maternal relatives does not advance [her] argument against terminating parental rights"]; *In re P.R.* (2015) 236 Cal.App.4th 936, 940 ["Because [mother's] parental rights have been terminated, and she makes no argument as to how alleged placement errors might be related to the termination decision, she lacks standing to challenge matters related to the minor's placement."].)

B.      *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Request for a Continuance of the Selection and Implementation Hearing*

Mother contends the juvenile court erred in denying the request by minor's counsel (joined by Mother) to continue the selection and implementation hearing to enable the Department to determine whether Joyce and Vincent would be willing to proceed with a legal guardianship, pointing out that minor's counsel represented that V.R. was "adamant in saying that she does not want to be adopted."

Although "[c]ontinuances are discouraged in dependency cases," they may be granted "upon a showing of good cause, provided the continuance is not contrary to the interest of the child." (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 779 (*Elizabeth M.*); accord, *In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.) Section 352, subdivision (a)(1), provides, "Upon request of counsel for the parent . . . , the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that a continuance shall not be granted that is contrary to the interest

13

of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."

"We review an order denying or granting a continuance for abuse of discretion. [Citations.] 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.'" (*Elizabeth M., supra*, 19 Cal.App.5th at p. 780; accord, *In re D.N.* (2020) 56 Cal.App.5th 741, 756.)

In denying the continuance request, the juvenile court explained its goal was to provide permanency and stability for V.R., noting that although V.R. wanted to be with Mother, Mother had not been involved in V.R.'s life. The court therefore appropriately considered V.R.'s "need for prompt resolution" of her custody status and the damage caused by "prolonged temporary placements," as required under section 352, subdivision (a)(1). Further, under section 366.26, subdivision (c)(1), if the court determines "by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." Regardless of whether Joyce and Vincent would consider a legal guardianship, as minor's counsel acknowledged at the hearing, V.R. was adoptable and no exception to termination of parental rights applied.

Mother argues the court should have considered V.R.'s preference not to be adopted by Joyce and Vincent, but instead to live with Mother or Maria. (See § 366.26, subd. (h)(1) ["At all

14

proceedings under this section, the court shall consider the wishes of the child and shall act in the best interests of the child."].)  But once the court determined by clear and convincing evidence that it was likely V.R. would be adopted, an exception to termination of parental rights applies only where "[a] child 12 years of age or older objects to termination of parental rights." (*Id*., subd. (c)(1)(B)(ii).)  V.R. was only eight years old at the time of the selection and implementation hearing.

In addition, as the Department notes, its June 2021 report for the selection and implementation hearing stated the Department recommended V.R. be adopted by Joyce and Vincent, yet neither Mother nor minor's counsel made any showing in seeking a continuance that Joyce and Vincent would consider a legal guardianship.  Indeed, Vincent testified at the hearing as to Maria's section 388 petition but remained silent when minor's counsel and Mother argued a continuance was necessary to explore the possibility that Joyce and Vincent would consider a legal guardianship.  And Maria by the time of the hearing had withdrawn her request for an RFA, so she was not eligible for a legal guardianship of V.R.  The juvenile court's denial of a continuance to enable the Department to explore a legal guardianship was therefore not "'arbitrary, capricious or patently absurd.'"  (*Elizabeth M., supra*, 19 Cal.App.5th at p. 780.)

C.     *The Juvenile Court and the Department Failed To Comply with ICWA and Related California Law*
       1.     *ICWA inquiry and findings*
On September 27, 2016 Mother filed a parental notification of Indian status form, on which she checked the box stating, "I have no Indian ancestry as far as I know."  Father's parental

15

notification of Indian status form checked the same box. At the September 27, 2016 detention hearing, the juvenile court stated, "We have parental notification of Indian status form. No Indian status for both parents." The minute order from the hearing similarly states, "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs]. Parents are to keep the Department, their Attorney, and the Court aware of any new information relating to possible ICWA status." At the May 9, 2019 hearing on the section 387 petition and the September 30, 2021 selection and implementation hearing, the court again found ICWA did not apply.

    2.    *ICWA inquiry and notice requirements*

ICWA provides as to dependency proceedings, "where the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to . . . an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 5*; In re Antonio R.* (2022) 76 Cal.App.5th 421, 428 (*Antonio R.*); *In re T.G.* (2020) 58 Cal.App.5th 275, 288.) California law also requires notice to the Indian tribe and the parent, legal guardian, or Indian custodian if the court or the Department "knows or has reason to know" the proceeding concerns an Indian child. (§ 224.3, subd. (a); see *Antonio R.*, at p. 429; *In re T.G.*, at p. 288; Cal. Rules of Court, rule 5.481(c)(1) [notice is required "[i]f it is known or there is reason to know an Indian child is involved in a proceeding listed in rule 5.480,"

16

which includes dependency cases filed under section 300].)  The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.,* at p. 5; accord, *Antonio R.,* at p. 428; *In re T.G.,* at p. 288; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (d).)

The juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W., supra,* 1 Cal.5th at p. 9; *In re H.V.* (2022) 75 Cal.App.5th 433, 437.)  "The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child. (§ 224.2, subds. (a)-(c))." (*In re T.G., supra,* 58 Cal.App.5th at p. 290; accord, *In re J.C.* (2022) 77 Cal.App.5th 70, 77; *In re H.V.,* at p. 437.)  Section 224.2, subdivision (b), effective January 1, 2019, imposes on the Department a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (See Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask . . . extended family members . . . whether the child is or may be an Indian child"]; *In re D.F.* (2020) 55 Cal.App.5th 558, 566; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551-552.)  "The duty to develop information concerning whether a

child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*Antonio R., supra,* 76 Cal.App.5th at p. 430.)

3.     *The juvenile court failed to ensure the Department satisfied its duty of inquiry*

Mother contends the Department should have inquired of the maternal extended relatives, including Maria, Vanessa, and Joyce, regarding V.R.'s possible Indian ancestry. The Department concedes remand is necessary for additional ICWA inquiry because the Department "failed to inquire of extended family members whether or not V.R. is an Indian child, as required by section 224.2, subdivision (b)."

We agree the Department failed to satisfy its duty of inquiry under section 224.2, subdivision (b). Notwithstanding Mother's and Father's denial of Indian ancestry, section 224.2, subdivision (b), obligated the Department to inquire of extended family members as to V.R.'s possible Indian ancestry. (See *In re J.C., supra,* 77 Cal.App.5th at p. 77; *Antonio R., supra,* 76 Cal.App.5th at p. 431.) Information relevant to V.R.'s possible Indian ancestry was readily obtainable from maternal grandmother Maria and maternal relatives Vanessa and Joyce. The juvenile court therefore erred in finding ICWA did not apply to the proceedings because the court failed to ensure the Department complied with its duty of inquiry. (*In re J.C.,* at p. 74; *Antonio R.,* at p. 432.)

## DISPOSITION

We dismiss Mother's appeal from the juvenile court's order denying Maria C.'s section 388 petition. The order terminating Mother's parental rights is conditionally affirmed. We remand to the juvenile court for the Department and the court to comply with the inquiry and notice provisions of ICWA and related California law, including inquiry of maternal relatives Maria, Vanessa, and Joyce, and any other reasonably available extended maternal and paternal family members. If the court finds V.R. is an Indian child, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law. If not, the court's original section 366.26 order will remain in effect.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.