Filed 3/13/23  In re J.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re J.J., Jr., a Person Coming Under the Juvenile Court Law. | C096223 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. JV-2020-30-1) |
| Plaintiff and Respondent, | |
| v. | |
| J.J., Sr., | |
| Defendant and Appellant. | |

Appellant J.J., Sr., father of the minor (father), appeals from the juvenile court's order identifying a permanent plan of legal guardianship and denying his request to place the minor and the minor's half siblings with the paternal grandmother.  (Welf. & Inst. Code, §§ 361.3, 366.26, 395.)[1]  Father claims:  (1) the juvenile court and the Yolo

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

County Health and Human Services Agency (Agency) failed to comply with the requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.); (2) the court and the Agency failed to comply with the relative placement mandates set forth in sections 309 and 361.3, thus rendering the finding of a permanent plan of legal guardianship defective; and (3) the court improperly delegated its authority to make determinations regarding visitation to the legal guardian.

The Agency argues it complied with the requirements of the ICWA. The Agency further argues father lacks standing to raise the relative placement issue and, in any event, he forfeited the issue by failing to raise it in the juvenile court. Even if father were able to raise the issue in this appeal, the Agency asserts, the juvenile court did not err in ordering a plan of legal guardianship. Finally, the Agency concedes that the juvenile court erred in ordering visitation with the minors to be in the guardian's discretion and agrees that remand is appropriate for further limited proceedings regarding visitation.

We will accept the Agency's concession and reverse and remand for limited proceedings regarding visitation. We conclude any ICWA error was harmless and will otherwise affirm the juvenile court's orders.

## BACKGROUND

Father and B.M. (mother), parents of J.J., Jr., (minor), were previously in a relationship in Louisiana but were never married. After father and mother went their separate ways, father remained in Louisiana and mother moved to California with the minor and entered into a relationship with J.J.J. (stepfather) who is the father of the minor's two half siblings, J.J. and A.J. (half siblings).[2] In 2020, the minor and his half siblings were detained pursuant to a dependency petition alleging, pursuant to section 300, subdivision (b), that mother and stepfather both demonstrated an inability to protect

---

[2] The two half siblings and stepfather are not parties to this appeal and will be mentioned only when relevant to the issues raised by father.

and care for the minor and his half siblings due to mental illness, developmental delay, and substance abuse, as well as domestic violence occurring between them in the presence of the children.

At the time of the February 4, 2020 detention hearing, father's whereabouts were unknown, but he was believed to be somewhere in Louisiana. The Agency noted there were two relatives considered for potential placement: the maternal grandmother, who lived out of state and with whom placement would require an interstate compact on the placement of children (ICPC), and the paternal aunt, who required financial assistance in order to provide for the needs of the minor and his half siblings. The court ordered the minor and his half siblings detained. They were placed together with a nonrelative foster caretaker.

On February 27, 2020, mother's counsel requested that the court order an ICPC for the maternal grandmother in Louisiana. However, the Agency informed the court that an ICPC could not be conducted until completion of jurisdiction and disposition.

In April 2020, the minor was still living with his half siblings in the home of the foster caretaker. Father, who was residing in Louisiana, claimed he had a brain injury that resulted in light sensitivity and short-term memory loss. He did not have a custody agreement with mother, and the minor had not lived with him for approximately six years.

The paternal grandmother requested placement of the minor and his half siblings in Louisiana, but the Agency did not support the requested placement due to concerns that mother and stepfather would not be able to arrange transportation to and from Louisiana to visit the children. The Agency also feared that, if the children were placed in Louisiana, mother and stepfather would flee California without the juvenile court's approval and would stop participating in reunification services. The maternal grandmother, the maternal grandfather, and two paternal aunts all requested placement of

the minor but could not be approved either due to inadequate space in the residence or because an ICPC was necessary to conduct further assessment.

On May 7, 2020, the court sustained the dependency petition, took jurisdiction over the minor, and ordered reunification services for mother, father, and stepfather. The court appointed counsel for father, who requested an ICPC and placement of the minor with him in Louisiana, noting he would need reunification services if the minor were placed with him. Mother requested an ICPC for the maternal grandfather who was located in Louisiana. The social worker noted an ICPC was also necessary for the paternal grandmother in Louisiana. The Agency informed the court that only one ICPC could be initiated at a time and suggested an ICPC be conducted first for father and then, depending on the outcome, next for the paternal grandparents. The parties agreed and the court so ordered.

On November 5, 2020, the Agency reported that the Department of Children and Family Services (DCFS) in Louisiana had initially been unable to contact father regarding the ICPC. Once they did make contact, father explained he had not yet made an appointment due to " 'many important things [he] had to handle and that he has brain damage.' " The Agency contacted father on another occasion, but father was "incoherent and appeared to be speaking to another person" and again stated he had " 'brain damage' " and could not reunify with the minor. Father then stated he was " 'busy' " and abruptly ended the call. The DCFS informed the Agency it was unable to approve a home study due to father's failure to comply with the ICPC process as well as his criminal and child welfare history.

After several continuances, the contested six-month review hearing commenced on February 9, 2021. The social worker testified that father was argumentative, yelled during contact, and did not appear to be interested in participating in counseling, mental health, or substance abuse services. Attempts by several social workers to contact father to discuss the case plan were unsuccessful. The paternal grandmother was willing to

4

complete a home study and participate in the ICPC process. The social worker informed her that it would be necessary to obtain the minor's birth certificate and Social Security card in order to initiate the process. The Agency requested the minor's birth certificate and Social Security card from the State of Louisiana in order to begin the ICPC process but those documents had not yet been received. After several attempts to contact the Louisiana DCFS, the Agency was informed (two weeks prior to the hearing) that the DCFS required a minute order showing the Agency had jurisdiction over the minor. The Agency provided the minute order to the DCFS but had not heard back since that time. In an attempt to begin the ICPC process by other means, the Agency spoke with the maternal grandmother (located in Minnesota) who stated it was her intent to go to Louisiana and obtain the required documents. In the meantime, father stated his opposition to the minor being placed with the paternal grandmother who, according to father, had "a gambling issue and is not a fit parent."

The court terminated reunification services to the parents, set the matter for a section 366.26 hearing, and ordered the parents to provide the Agency with information regarding any potential relative caretakers. The court further ordered expedited ICPCs.

On June 15, 2021, the Agency informed the court that the ICPC process was not likely to be completed within the next six months. The court continued the section 366.26 hearing while the Agency continued efforts to facilitate the ICPC process in California, Minnesota, and Louisiana, including efforts to contact the maternal and paternal grandmothers.

In its section 366.26 report, the Agency recommended the court not terminate parental rights and instead order a permanent plan of legal guardianship with the caregiver with whom the minor and his half siblings had been placed since removal.

On April 21, 2022, at the section 366.26 hearing, the Agency modified its recommendation to include dismissal of the dependency case following an order for legal guardianship. Father objected to the recommended disposition and, without providing

5

any evidence, requested that the minor be returned to his care.  The court ordered a plan of legal guardianship, issued visitation orders, and terminated the dependency.

## DISCUSSION

### I

### *ICWA*

Father contends the Agency failed to make sufficient ICWA inquiry regarding the paternal grandfather's possible Indian heritage and failed to memorialize its attempts, if any, to do so.  As we will explain, any error on the part of the Agency was harmless.

*A.  Background*

At the time of detention, both parents informed the Agency they had no known Indian ancestry.  Mother completed a parental notification of Indian status to that effect, and the Agency confirmed as much in its February 2020 detention report.  At the February 4, 2020 detention hearing, the court made a finding that the ICWA did not apply.

In its jurisdiction report, the Agency noted mother and stepfather denied any Indian ancestry, but father reported his deceased father (the paternal grandfather) was of Indian heritage, although he did not recall which tribe.  Father later stated he was unaware of any other family members who could identify the tribe with which the paternal grandfather was affiliated.  The paternal grandmother denied any Indian ancestry, but she also reported the paternal grandfather was "part Native American," although she too was unable to identity a particular tribe.  The Agency requested a continuance to "complete ICWA noticing."

On May 7, 2020, the court sustained the dependency petition, exercised jurisdiction over the minor, ordered removal of the minor from the parents, and found the minor may be an Indian child.

The Agency sent ICWA notices to the Bureau of Indian Affairs (BIA) in California and Washington, D.C.  The notices included information regarding the parents

6

and the maternal and paternal grandparents, including the name, former address, birthdate, and place of death of the paternal grandfather who reportedly had Indian ancestry.

The court's February 16, 2021 order noted the minor may be an Indian child and investigation in that regard was ongoing.

In April 2022, the Agency reported receipt of a letter from the BIA advising that the ICWA notice contained "insufficient information to determine Tribal Affiliation" and instructing the Agency to forward the ICWA notice to the appropriate tribe(s) once additional information became available. The Agency requested that the court again find the minor was not an Indian child for purposes of the ICWA. On April 21, 2022, the court so found.

*B. Analysis*

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' [Citation.]" (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason

7

to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

Here, the Agency and the juvenile court made initial inquiry of both parents. Based on father's and paternal grandmother's belief that the paternal grandfather (deceased) had some Indian heritage with an unknown tribe, the Agency prepared ICWA notices and sent them to the BIA. The notices included the known information regarding the paternal grandfather, including his name, former address, birthdate, and place of death.

Father claims the fact that the ICWA notices contained no information about the paternal great-grandparents shows the Agency failed to inquire about or obtain any information regarding those relatives. He asserts that the Agency had access to the paternal grandmother and could easily have inquired regarding the paternal great-grandparents but failed to do so. We are not persuaded. The record makes plain that, because the paternal grandfather was deceased, the Agency spoke about possible Indian ancestry with the paternal grandmother who stated her belief that the paternal grandfather had some tribal affiliation. However, neither she nor father mentioned any other relative

8

with possible Indian heritage, nor could they identify any other family member who could identify the tribe or provide additional information.

Even assuming the Agency did not inquire of the paternal grandmother about the paternal great-grandparents, any failure to do so "is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.) The Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra*, 46 Cal.App.5th at p. 1053.) There is nothing in the record, nor does father proffer any evidence, confirming that the paternal great-grandparents were still alive and accessible. The fact that father and the paternal grandmother did not identify them as possible sources of information suggests they were either no longer living or had no relevant information. Neither father nor the record gave a reason to believe the minor was or might be an Indian child. Nor does father, on appeal, proffer any such reason to believe. (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 [parent asserting failure to inquire must make an offer of proof or affirmatively claim Indian heritage on appeal]; accord, *In re G.A.* (2022) 81 Cal.App.5th 355, 364, review granted Oct. 12, 2022, S276056.) Thus, father has not demonstrated that the absence of further inquiry was prejudicial to the court's ICWA finding. (*In re G.A.*, at p. 365.)

We conclude any error on the part of the Agency in making adequate inquiry under the ICWA was harmless.

## II

### *Relative Placement and Legal Guardianship*

Father contends the failure of the juvenile court and the Agency to comply with the mandates of the relative placement statutes (§§ 309, subd. (e), 361.2, 361.3), in

9

conjunction with the "derailed" ICPC process, rendered defective the court's finding that legal guardianship with a nonrelative was the appropriate permanent plan.

The Agency first argues father lacks standing to raise the relative placement issue where, as here, his reunification services had already been terminated, and he was not aggrieved by the court's order. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1035 (*Cesar V.*); *In re A.K.* (2017) 12 Cal.App.5th 492, 499; *In re K.C.* (2011) 52 Cal.4th 231, 236.) The Agency further argues father forfeited the issue for failure to raise it in the juvenile court (*In re A.K.*, at p. 498) and, in any event, the juvenile court did not err in ordering a permanent plan of legal guardianship. We agree that father lacks standing to raise the issue of relative placement and, even assuming he had standing, he has forfeited his right to raise the issue.

Standing to raise a particular issue on appeal depends on whether the person's rights were injuriously affected by the judgment or order appealed from. (*Cesar V., supra*, 91 Cal.App.4th at pp. 1034-1035; accord, *In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261.) A person does not have standing to urge errors on appeal that affect only the interests of others. (*In re Gary P.* (1995) 40 Cal.App.4th 875, 877.) Accordingly, a parent is precluded from raising issues on appeal that do not affect his or her own rights. (*In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806.)

In dependency proceedings, a parent's interest is in reunification and in maintaining a parent-child relationship. (See *In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541.) While reunification efforts are ongoing, parents generally have standing on appeal to raise issues concerning relative placement. This is because one of the rationales for placing children with relatives is that, during reunification, "[a] relative, who presumably has a broader interest in family unity, is more likely than a stranger to be supportive of the parent-child relationship and less likely to develop a conflicting emotional bond with the child." (*In re Baby Girl D.* (1989) 208 Cal.App.3d 1489, 1493.)

On the other hand, when reunification is no longer being pursued, a parent is not aggrieved by placement determinations. Thus, the court in *Cesar V.* held that "a parent does not have standing to raise relative placement issues on appeal, where the parent's reunification services have been terminated. (*Cesar V., supra*, 91 Cal.App.4th at p. 1035.) This is because decisions concerning placement of the child do not affect the parent's interest in reunification, where the parent is no longer able to reunify with the child." (*In re A.K., supra*, 12 Cal.App.5th at p. 499; see *In re Isaiah S.* (2016) 5 Cal.App.5th 428, 435-436.)

Here, the juvenile court denied reunification services to father on February 16, 2021. Thus, father had no interest in the possible future placement of the minor with a nonrelative foster caretaker. Having failed to establish that his rights and interests are injuriously affected by the placement of the minor with the foster caretaker, father lacks standing to raise the alleged error on appeal.

Even assuming father had standing to raise the issue, he forfeited his right to do so due to his failure to raise the issue in the juvenile court. (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502; *In re A.K., supra*, 12 Cal.App.5th at p. 498.) Father argues, for the first time on appeal, that the Agency disregarded relative placement laws, failed to follow the juvenile court's ICPC order, and derailed the ICPC process. However, while father was present with counsel at the section 366.26 hearing, neither he nor his attorney requested that the minor be placed with the paternal grandmother, asked for additional assessment of relatives, objected to the lack of a completed ICPC, or requested a continuance for additional assessment and information. Indeed, throughout the proceedings, father made known his desire that the minor *not* be placed with the paternal grandmother due to what he characterized as her marital, gambling, and drug use problems. At the section 366.26 hearing, father simply requested the minor be placed with him, but failed to file a section 388 petition in order for the court to consider such

11

request.  Father's failure to object in the juvenile court forfeits his right to raise the issue here on appeal.

III

*Visitation*

Finally, father contends the court unlawfully delegated to the guardian the determination of whether visitation between father and the minor would occur at all.  The Agency concedes the error.  We accept the Agency's concession as proper.

A juvenile court has the power to make " 'exit orders' " regarding custody and visitation when it terminates dependency jurisdiction, which will remain in effect unless terminated or modified by a family law court.  (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.)  When legal guardianship is ordered, the dependency court must make an order for parental visitation, unless visitation would be detrimental.  (§ 366.26, subd. (c)(4)(C); *In re M.R.* (2005) 132 Cal.App.4th 269, 274.)

In making visitation orders, a juvenile court can properly delegate "the ministerial tasks of overseeing the right as defined by the court. . . .  Such matters as time, place and manner of visitation do not affect the defined right of a parent to see his or her child and thus do not infringe upon the judicial function."  (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757; accord, *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.)  But, "[i]f the juvenile court orders visitation, 'it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur.'  [Citation.]  When the court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion.  [Citation.]"  (*In re Ethan J.* (2015) 236 Cal.App.4th 654, 661; accord, *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 519.)  Neither the guardians nor the children may be given absolute discretion to determine whether visitation will occur at all.  (*In re M.R., supra*, 132 Cal.App.4th at p. 274; *In re S.H.* (2003) 111 Cal.App.4th 310, 317-320.)  "Only when a visitation order

12

delegates . . . the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine." (*Moriah T.*, at p. 1374.)

Here, the court identified the minor's permanent plan as legal guardianship, ordered that visitation between the minor and the parents "is going to be at the discretion of the legal guardian," and terminated the dependency. In doing so, the court impermissibly delegated its authority to the legal guardian to determine whether visits occurred at all. Given the improper delegation of authority to the guardian, "we must remand for further proceedings at which the juvenile court shall clarify the terms and conditions applicable to [father's] visitation . . . ." (*In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136.)

## DISPOSITION

The portion of the guardianship order regarding visitation is reversed. The matter is remanded to the juvenile court with directions to issue a new visitation order clarifying the terms and conditions of visitation consistent with the views expressed herein. The order shall specify the frequency and duration of visits and whether the visits are to be supervised. In all other respects, the juvenile court's orders are affirmed.


/s/
EARL, J.


We concur:


/s/
HULL, Acting P. J.


/s/
BOULWARE EURIE, J.

13