Filed 9/24/25  In re K.B. CA3

NOT <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | C102502 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>K.S. et al.,<br><br>        Defendants;<br><br>K.B.,<br><br>        Appellant. | (Super. Ct. No. 22DP00241) |

K.B. (minor) appeals from the juvenile court's orders (1) terminating parental rights and freeing the minor for adoption, and (2) denying grandmother's request for

1

placement. (Welf. & Inst. Code,[1] §§ 366.26, 361.3.) The minor contends the juvenile court erred in not placing the minor with grandmother at the initial detention hearing, at the disposition hearing, at the six-month review hearing, or when the minor was moved to a new placement. Minor also contends it was in the minor's best interest to place her with her relatives (her grandmother and younger brother, C.B.) under section 361.3. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2022, Chico Police searched for father, J.B. (father), who was a suspect in a stabbing. During their search, they discovered the minor, a five-month-old female infant, in a tent in a homeless camp. Police also found marijuana and methamphetamine drug paraphernalia in the tent near the minor. The tent was filled with trash and infested with bugs.

Police arrested father on an outstanding warrant and for possession of a controlled substance and mother for child endangerment. Social workers took the minor into protective custody.

Mother said she had been in an " 'off and on' " relationship with father since she was 14 and the pair had been homeless for the last several months. They had been staying in the tent for the last week and a half or two weeks and, prior to that, had been staying with relatives. Mother admitted she had a history of methamphetamine use but claimed she had gotten clean during her pregnancy with the minor. She asserted now she used only marijuana.

Father denied involvement in the stabbing but admitted methamphetamine and marijuana use. He had previously completed three months of substance abuse treatment prior to the minor's birth but relapsed shortly after leaving that program. He claimed he, mother, and the minor had been staying in the park for only a day or two.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

Grandmother, L.A. (grandmother), expressed an interest in placement. The detention report noted, however, grandmother lived in Lancaster and the physical distance between Butte County and her residence would interfere with parental visitation.

The Butte County Department of Employment and Social Services (Department) filed a dependency petition under section 300, subdivisions (b)(1) and (g). The petition alleged there was a substantial risk the minor would suffer serious physical harm or illness due to the willful or negligent failure of the parents or the inability of the parents to provide care due to substance abuse. The petition further alleged the minor was left without parental support due to the arrest of both parents.

The juvenile court held the detention hearing on October 12, 2022. Father objected at that hearing. The minor submitted on the reports. The juvenile court detained the minor, placed her with the Department, and ordered services for the parents pending further proceedings. The minute order reflects later that morning, when mother appeared and submitted, the juvenile court confirmed its prior findings. No one objected to the failure of the juvenile court to place the minor with grandmother, the efforts of the Department, or sought appellate review of that order.

Mother and father attended the jurisdictional hearing in November 2022. Mother signed a waiver of rights and submitted; father objected without evidence or testimony. The juvenile court found the petition allegations true. The juvenile court ordered reasonable visitation and set a disposition hearing. Again no party objected to the placement or sought appellate review of that order.

In the disposition report, the Department reported the minor was in foster care and that grandmother and great-grandmother were interested in placement but lived in Southern California. The Department noted it was currently attempting to provide reunification services to the parents who lived in Butte County and moving the minor out of county would inhibit those services. Mother and father agreed that to be safe and stable parents for the minor, they needed to remain clean and sober. Mother and father

3

visited the minor twice weekly. Mother began parent engagement classes, and she completed an assessment with behavioral health and began participating in a behavioral health program. Father began the parent engagement classes but was not participating in any drug or alcohol counseling services. Mother and father, however, both admitted to recent ongoing methamphetamine use.

The parents identified grandmother and great-grandmother as the family's preference for placement in the event neither parent successfully reunified with the minor. The Department recommended the minor be placed under its supervision and that a plan of family reunification should be ordered as to mother, but reunification services should not be offered to father.

At the disposition hearing on November 30, 2022, mother, father, and the minor submitted on the matter. The juvenile court declared the minor a dependent, removed her from mother's and father's custody, and ordered family reunification services for both parents. No party objected to the placement or filed a notice of appeal.

The May 2023 six-month status report noted mother had recently relapsed and was arrested for violating her probation. Father had not been able to maintain sobriety or abide by the terms of his probation. Both parents were unemployed, without a car or safe home, and in the early stages of recovery from their methamphetamine addiction.

Both mother and father agreed they did not have the ability to safely care for their daughter or a home or resources to do so. Mother and father again named grandmother as their preferred concurrent plan for the minor so they are able to ensure her safety with a relative. Both grandmother and great-grandmother were ready and willing to be a concurrent plan for the minor. In the report, the Department recommended family reunification services be denied to both father and mother and that the juvenile court set a section 366.26 permanency plan hearing.

The juvenile court held a six-month review hearing on May 17, 2023. Grandmother attended the hearing. Mother objected to the Department's

recommendation and requested a contested hearing; father joined that request. The juvenile court set the matter for a contested six-month review hearing on June 27, 2023.

At the contested hearing in June, the parties agreed they would submit on the recommendation to terminate family reunification services and to set a section 366.26 hearing with the understanding the parents' intended permanent plan would be legal guardianship with grandmother. The juvenile court terminated reunification services for both the parents and set a section 366.26 hearing for October 25, 2023. The juvenile court ordered visitation consistent with the well-being of the minor and with the grandparents in a manner that served the best interests of the minor. There was no objection to this order or appellate review requested.

The section 366.26 hearing commenced on October 25, 2023, but did not conclude until October 30, 2024. The juvenile court allowed the parties to brief the issue of whether the minor should be placed with grandmother in their closing briefs.

In the original section 366.26 report, the Department recommended that the juvenile court terminate parental rights as to both parents and find the minor adoptable. Adoptions Specialist Heather Knight echoed this recommendation in an attachment to the section 366.26 report.

According to Knight, the minor had a four-month-old full brother who was currently in the hospital and grandmother intended to apply for guardianship of the brother, but there was no significant positive relationship between the siblings. Although grandmother had engaged in a video call with the minor for a minimal amount of time, she had not followed through with the resource family approval process. The initial resource family approval referral had been made in May 2023, but the referral had been closed due to the lack of her follow through. Knight conducted a parent-child suitability assessment of grandmother and determined placement and permanency were not appropriate. Grandmother was not able to articulate or provide documentation of her sobriety date and had not taken the next steps necessary to be resource family approved

5

for the placement. Knight concluded, "[G]randmother and great-grandmother do not have the capacity to parent safely full-time and cannot meet the [minor]'s long-term needs. Based on the parent-child suitability assessment completed to date, the placement appears to not be appropriate. Therefore, permanency cannot be approved."

At the continued hearing in November 2023, the juvenile court noted there had been some family members seeking placement, but the report was not clear. The juvenile court asked the Department to file an addendum to the report to address this issue and continued the hearing.

The Department filed an addendum to the section 366.26 report on November 21, 2023. The Department noted the minor had been in a foster home since October 2022, but that family was not in a position to provide her with permanency. The minor had recently matched with an adoptive family and would be transitioned to a new home in November. The addendum confirmed grandmother (and great-grandmother) expressed an interest in placement and began the resource family approval process in Los Angeles in May 2023, but the two did not complete the initial required classes and the application was withdrawn due to their lack of follow through. A new referral had been sent to Los Angeles County in August of 2023, which was still being processed. The addendum noted the social worker's concerns with grandmother's sobriety date and her ability to care for two children under two, including the minor's brother.

The juvenile court held the continued section 366.26 hearing and a periodic review hearing in early December 2023, but continued the matter to allow father's counsel to locate father. At the next hearing, the court set the matter for a contested section 366.26 hearing in February 2024.

At the February 2024 hearing, the social worker testified the Department recommended terminating the mother's and father's parental rights. The social worker testified that when she made her permanency recommendation, she assessed grandmother. The social worker confirmed grandmother did not make much progress in

6

the May 2023 resource family approval process because she was having construction in her home and did not complete the required training. Due to that construction, she was unable to keep the minor in her care. As of this hearing date, grandmother still needed to have her home assessed and complete a "bio psycho social assessment." The social worker confirmed placement with grandmother during the early stages of the case would have interfered with visitation from the mother and father.

The social worker testified as to her concerns about grandmother's sobriety. Grandmother reported different dates of sobriety and then was not sure of the date. From there, she was vague on the steps she had taken to become sober. The social worker also had concerns about grandmother's ability to care for the minor because she was also caring for the minor's younger brother who was medically fragile and needed extensive follow-up care. In addition, the social worker did not believe grandmother could protect the minor from her parents. The social worker told grandmother that if the minor was in her home, father could not be there. She responded that she understood but wanted to help father.

In terms of visitation, the social worker said grandmother and the minor have had phone calls and video calls. Grandmother also visited the minor once when she was in the prior foster home. The two did not interact much and the social worker did not believe there was a significant relationship between the two.

When the social worker finished testifying, the Department asked to continue the hearing to allow it additional time to complete the resource family approval process and provide the juvenile court with the assessment. The juvenile court granted the continuance and ordered that the relatives requesting placement be fully assessed.

The Department filed a second addendum to the section 366.26 report in March 2024, noting the minor was now in a home that was willing to provide permanency in the form of adoption should the minor be found adoptable and the parental rights terminated. That addendum repeated that grandmother's initial application for the resource family

7

approval had been withdrawn due to the lack of her follow through and the current resource family approval had not yet been completed. Grandmother and great-grandmother continued to put up barriers to completing the resource family approval process and had not provided the required documentation. The social worker working on the resource family approval process reported that grandmother would change or withhold information and then later provide new information. For these reasons, the Los Angeles County social worker did not learn grandmother had lived in Texas for some period of time until the second interview, which caused a delay in the resource family approval assessment.

According to the second addendum, grandmother resided with the maternal great-grandmother and the minor's brother. The maternal great-grandmother had several arrests dating back to 1995 through 1996, including for possession of a controlled substance for sale, welfare fraud, and perjury. In addition, grandmother's background checks were incomplete because she had lived in Texas in 2018. Grandmother had prior issues with heavy drinking and methamphetamine use, and further investigation revealed grandmother and her ex-husband were the subject of referrals stating that they fought often and both abused methamphetamines. There were reports that grandmother attempted suicide while the unspecified children in her care were sent over to a neighbor's home. The second addendum continued that grandmother had not followed through with providing supporting documents and repeated the prior concerns about grandmother's ability to protect the minor.

The second addendum further reported grandmother told the social worker she admitted herself into an in-patient treatment center in October 2019 for alcohol and methamphetamine use and was discharged after 30 days. The statement that her treatment was for both drugs and alcohol contradicted a previous conversation where grandmother stated she sought treatment only for alcohol. Grandmother admitted one relapse in August of 2022 related to methamphetamines and alcohol but again had

8

previously admitted only to alcohol use. In 2021, a mandated reporter reported grandmother had used methamphetamines with mother and that grandmother tested positive for methamphetamines. Grandmother denied ever using methamphetamines with her daughter and said she had never been ordered to drug test.

The second addendum indicated grandmother had followed up on the guardianship of the minor's brother but had not yet provided documentation of those efforts. She also failed to provide documentation showing she continued to work on her sobriety. Grandmother also admitted allowing the father to stay at her home for three weeks. During that stay, father stole her car.

The second addendum indicated the minor did not have a substantial relationship with grandmother or the maternal great-grandmother. Grandmother had video calls with the minor during mother's visits but had not visited her in person. The addendum concluded there were many factors prohibiting the placement with grandmother (and great-grandmother), including their "good moral character, providing an accurate representation of [their prior] substance abuse history, and the relationship dynamic" with grandmother's ex-husband and the parents.

The Department also submitted an amended adoptions report. This report noted grandmother failed to fully fill out the family history questionnaires. She did not respond to questions about her recent use of drugs and alcohol, her recovery, mental health services, and medications for mental illnesses. During the follow-up conversation, grandmother stated she began using illegal substances at the age of 15, but later stated it was 2018. She claimed to have completed a treatment program in 2019 and relapsed in 2022. She did not, however, provide the requested documentation on these subjects to the adoption specialist or to the Los Angeles County social worker.

The report provided the social worker's evaluation of the best interest of the minor, the wishes of the parents, the placement of her sibling in grandmother's home, the good moral character of the relatives, the nature and duration of the relationship between

9

the minor and grandmother, the ability to provide legal permanence, and the safety of the home. At this point, the minor had not met her brother and did not have a positive relationship with him. The lack of a completed resource family approval process also called into question the safety of grandmother's home.

Meanwhile, the contested section 366.26 hearing was continued multiple times to August 2024.

Prior to the continued hearing, the Department filed an amended addendum report in March 2024 containing the following information. The potential adoptive family had agreed to facilitate appropriate contact with the minor's family members who wanted to be part of the minor's life. The report stated the parents wanted the minor placed with grandmother, and the Department had made efforts pursuant to the Family Code regarding relative placement. The background check had been received, and a third interview with grandmother had been scheduled. A probate investigator in Los Angeles who was doing an investigation for the guardianship of the minor's brother also had concerns about grandmother's relapse in 2022 and had said she had no way to confirm grandmother was no longer drinking. The investigator reported grandmother had not timely applied for guardianship in Los Angeles and the investigator would be denying the guardianship due to her lack of being "forthcoming" and withholding of previous child welfare history. The investigator also expressed concerns about grandmother's ability to provide for the minor as the services that provide her with diapers, formula, and other provisions would not be provided if the guardianship was not approved. Mother also had confirmed using methamphetamines with grandmother, contrary to grandmother's statement.

The Department filed an additional addendum report in July 2024, informing the juvenile court grandmother had reached out for three video visits with the minor. The video visits were short as the minor was easily distracted, but the minor was quickly

10

redirected when shown her baby brother as the minor enjoys babies. The minor was comfortable in her current placement and was attached to her caregiver.

At this time, the Department was still waiting for the final decision from the Los Angeles resource family approval assessment. But the social worker had been informed that the Los Angeles social worker had submitted the assessment as a denial to the legal team and the final decision would be up to their legal counsel.

During an unannounced visit to grandmother's (and great-grandmother's) home, social worker Erin Sweet observed the home was cluttered with tools, clothing, and belongings. It needed some structural repairs, as the subfloor had been exposed in one bedroom. The bedroom was very hot because the only air conditioning in the house was a window unit in the living room. The crib set up for the minor was full of items. In another room, there were vape pens within a child's reach. During her conversation with grandmother, the social worker noted that grandmother's sobriety timelines did not make sense.

On August 20, 2024, the juvenile court held the second day of the contested hearing and the third day of testimony on September 5, 2024.

Sweet testified as to her unannounced visit to grandmother's home in line with the report she submitted. She noted the cluttered state of the porch and the home, the lack of any place for the family to sit and have a meal, the extreme warmth of the bedroom, the crib piled with belongings, the exposure of the subfloor in the bedroom, and the room with vape pens.

She also spoke with grandmother about her sobriety. Sweet testified to her concerns about the length of grandmother's sobriety, that she was not in a recovery program, had no formal support, and was intentionally omitting details. Sweet also had concerns about grandmother's ability to keep the minor safe in the home, concluding it would be a struggle for grandmother to add a second child to her care.

11

Social worker Leslie Lopez testified she asked for paperwork from grandmother concerning her attendance at Narcotics Anonymous and Alcoholics Anonymous, her recovery paperwork, and her guardianship paperwork. Grandmother did not provide them.

As of this hearing date, Los Angeles County had denied the resource family approval for grandmother. The social worker testified grandmother's visits with the minor were sporadic and through video. As of this August hearing, she had not engaged in a visit since July 3, 2024.

The social worker restated her opinion that the parent's parental rights should be terminated at this time. She considered the minor's relationship with her younger brother in that assessment. She noted, "[The minor] was only five months [old] when she was detained; she doesn't have an actual relationship with [the brother] or with the other sibling. They do have video visits, and they will continue to have those video visits with the current caretaker to have a relationship, but I don't think that it's strong enough for us to not [terminate the parental rights]."

The social worker also testified she did not believe the minor should be placed with grandmother. She based this opinion on her conversations with grandmother, her lack of a sobriety date, her changing timelines as to her sobriety, and her concealment of her use of methamphetamines. She was also concerned that grandmother would not protect the minor from her parents. The social worker was also concerned about maternal great-grandmother's presence in the home given her unwillingness to provide disclosures of her past and her criminal record.

Adoptions Specialist Knight, who prepared the original adoption assessment, testified she found the minor generally adoptable. When the minor transitioned from her first foster home to the second foster home, she had already been working with grandmother and great-grandmother to preliminarily assess them, but they had not been resource family approved. She confirmed she asked for a second referral to Los Angeles

County for a resource family approval to assess them in August 2023. Her preliminary assessment was that they were not appropriate for placement, but she encouraged them to continue with the resource family approval process.

Like the other social worker, Knight did not find grandmother or great-grandmother to be forthcoming with information, especially on issues of drug and alcohol abuse, and said they would provide new information that contradicted the original information given. This caused her to question grandmother's moral character. She did consider that the minor's brother lived with grandmother. She noted that there had not been much growth in that sibling relationship given the children's young ages and limited visitation. She was also concerned about grandmother's ability to provide a safe and stable environment given her lack of employment and lack of longevity in her home. Grandmother had also allowed the parents into her home during the dependency case. On cross-examination, Knight said that if grandmother had been resource family approved, she would have had the ability to further assess her and ask additional questions, but she did not believe that would change her opinion. She stated resource family approval is not a guarantee of placement, so the parenting classes are not required, but it is something that she considers in determining whether a family can meet a child's ongoing and long-term needs. She did say that resource family approval was required for placement and funding.

Grandmother testified next via video conferencing. Grandmother testified she had custody of the minor's one-year-old brother since September 2023 and had been granted guardianship in June 2024. She asserted the minor's brother did not have any special needs. She had no concerns about being able to care for both the minor and her baby brother. Her guardianship made her eligible for assistance through Temporary Assistance for Needy Families, CalFresh, and Women, Infants & Children.

Grandmother believed hanging out with the wrong people and her failing marriage were the reasons she started to abuse methamphetamines in 2016. To avoid repeating

13

this pattern, her solution was to "keep to herself."  She could not identify any tools, skills, or classes that would help her in the future.

Grandmother testified that her sobriety date was August 2, 2022.  She stated she never gave any of the investigators different dates but may have misstated the date she went into rehabilitation in 2019.  She also admitted a relapse with alcohol and methamphetamines in July 2022.  She claimed she started to go to Narcotics Anonymous meetings and was still attending meetings twice a week, she enrolled in a 26-week outpatient program, and she underwent some counseling.  Grandmother testified she engaged in voluntary drug testing on her own.  She was no longer going to counseling.  She claimed she had provided her certificate of completion to the social worker sometime in 2023.  Grandmother knew the Butte County social workers questioned her honesty and chalked it up to her being "terrible with timelines."  She again denied ever using methamphetamines with mother.

Grandmother testified the minor and the minor's mother had lived with her the first three months of the minor's life, and she had daily contact with the minor during that time.  Since then, she has had only a single in-person visit with the minor.  She also had two to three video visits each month.

Grandmother first claimed never to have received any notice she was denied for resource family approval certification.  She later claimed to have completed all the paperwork but admitted she failed to take the classes in this process but was informed that she would have to reapply for resource family approval.  When asked about this, she asserted her application was complete, but she was in the middle of a remodel job and did not complete it in a timely fashion.  She then admitted she received a letter stating they were ceasing the application process.  She reapplied sometime in July or August of 2023.  She testified she completed all the classes in the second application.  She also testified she had received nothing indicating the second application had been denied.

Grandmother agreed her home was very cluttered during the unannounced visit because she was going through a storage shed. She indicated that the subflooring observed by the adoption specialist has since been covered by carpet. She claimed to have cleaned up the house since then.

On rebuttal Adoption Specialist Knight testified grandmother contacted the current foster parents to visit with the minor only one time per month and this was typically right before court hearings. She also stated grandmother first claimed to have used " 'meth' " when she was 15. She later changed that statement to be when she was an adult. Knight confirmed that the first resource family approval process was stalled because of a lack of progress in completing the process.

Social worker Lopez testified she received an e-mail from the Los Angeles social worker in August of 2024 indicating that they intended to deny grandmother's resource family approval application. She also testified the Department never received any information from grandmother about her participation in a 26-week treatment program. Indeed, she could not find the program grandmother said she attended. When she looked up the address of the program, it turned out to be a six bedroom residential home.

After receiving briefing from the parties, the juvenile court found the minor adoptable and terminated the parental rights, as there was no evidence to support any of the exceptions to terminating parental rights.

The juvenile court provided a detailed ruling as to why it declined the request to place the minor with grandmother. The juvenile court affirmed it was making an independent placement decision under section 361.3.

The juvenile court agreed grandmother was mentioned in all of the reports starting with the detention report. At the start of the case, however, placement with grandmother was not appropriate because the parents, who lived in Butte County, desired to reunify and grandmother lived in Los Angeles.

15

The juvenile court found the first resource family approval was started with grandmother in May of 2023. The court stated, "[G]randmother did not attend any of the classes required, and although the timing may have been unfortunate, was not in a position to have the [minor] placed with her because her housing was in need of repairs.· Reunification services were terminated on June 27th, 2023, and, therefore, [the minor's] need for permanence was set in motion."

The juvenile court noted the October 2023 report revealed that the minor's current placement would not provide permanence, which put everyone on notice that a new placement was being contemplated. The adoption report discussed the assessment of grandmother and determined that placement and permanency with her was not appropriate. The juvenile court stated that if there were concerns about that determination, they should have been raised at that point.

The juvenile court stated the November 2023 report noted the new adoptive home had been discovered and the plan was to move the minor to that new home. The report noted a second resource family approval was started for grandmother in August 2023. The juvenile court acknowledged counsel argued grandmother had not been assessed, however, she was assessed, and counsel should have raised questions as to that assessment at that point in time.

The juvenile court found the facts of this case diverged from those of *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023: "The [c]ourt also notes that the facts in *Cesar V* are somewhat different in that the social worker in that case began looking for another foster family even before that relative had received the forms needed for the assessment. That is not the case here. [G]randmother had the opportunity to become approved starting in May of 2023, and did not complete the process. The adoptions specialist did not start matching until sometime after, and did not propose . . . to move [the minor] until six months after . . . grandmother started and then stopped the process."

16

In making its independent placement decision, the juvenile court considered the best interest of the minor. The juvenile court was mindful that the delay in completing the contested hearing meant the minor had become more bonded with her potential adoptive parents. These delays were due to father's custodial status, the resource family approval processes in Los Angeles, and illnesses in some instances. The juvenile court relied on the fact that grandmother did not demonstrate she was serious about the resource family approval process. It found that if grandmother had been serious, she would have completed the required classes, and she did not do so until after the second referral had been made. The juvenile court considered the wishes of mother and father and found Family Code section 7950 had been followed.

The juvenile court found the factor that the minor's sibling was living with grandmother complicated the analysis. The court continued: "However, [the minor and her brother] were not removed at the same time, obviously, because [the brother] had not yet been born. And [the brother] is not a dependent of the [c]ourt, but rather in a probate guardianship situation with . . . grandmother. They do not have a sibling relationship. And while one, obviously, could be formed, the [c]ourt is concerned about placing the child with a relative who was denied [resource family] approval."

The juvenile court did not put much weight on the issue of the good moral character of grandmother, but did note that it was concerned with her vague answers and grandmother's former use of drugs (coupled with that of the parents). It was also concerned with some of grandmother's answers during her testimony and found she had been evasive.

The juvenile court found the nature and duration of grandmother's relationship with the minor was minimal. The record disclosed that after the initial five months of living with the minor, grandmother made limited efforts to maintain that relationship. Her video visits two or three times a month were not significant in this minor's young

life, especially when grandmother could have easily made two or three times a week visits via video.

Finally, the juvenile court stated, "Regarding the factors under [section 361.3, subdivision (a)(7)], the denial of the [resource family approval] does call into question the ability to provide a safe, secure, and stable environment, as well as to exercise proper and effective control of the [minor], and to provide the home and necessities of life. [¶] The descriptions elicited during the social workers' testimony . . . indicate that maybe she could, but the [c]ourt is concerned with placing a child in an unapproved home. [¶] In addition, I'm concerned about her ability to protect the [minor] from her parents." This latter concern was evidenced by grandmother's open door policy with the parents and failure to call law enforcement when father stole her car. In the end, the juvenile court put "the most weight on the best interest of the child, the minimal relationship [with grandmother], and her lack of commitment to following through with the process when she was initially given the opportunity."

Minor appeals.[2]

DISCUSSION

I

*Forfeiture*

Minor argues: (1) the Department failed to meet the requirements of section 309 and place the minor in grandmother's home when she was first removed from the parents' custody, (2) substantial evidence does not support the juvenile court's finding at the disposition hearing that the Department made diligent efforts to locate and investigate grandmother during the proceedings, and (3) the juvenile court erred when it approved relocating the minor to another foster placement without considering grandmother's

---

[2] Mother also filed a notice of appeal, but this court dismissed her appeal after she failed to file an opening brief.

18

request for placement under section 361.3.  Each of these contentions is forfeited by minor's failure to pursue the matter in the juvenile court or seek appellate review of these now final orders.

" 'Dependency appeals are governed by section 395, which provides in relevant part:  "A judgment in a proceeding under [s]ection 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . ." ' [Citation.]  Section 395 makes the dispositional order the appealable 'judgment.'  Therefore, all subsequent orders are directly appealable, except for orders setting a section 366.26 hearing, challenged by a timely writ petition, which was summarily denied or not decided on the merits." (*In re A.K.* (2017) 12 Cal.App.5th 492, 500-501.)  In *A.K.*, the court concluded that if the father believed the Department "had not complied with statutory requirements in pursuing . . . a relative placement, he could have raised the issue in the juvenile court and, thereafter, on appeals from the disposition order, the 12-month review order, or [any of the other] appealable orders." (*Id.* at p. 501.)  He did not do so and thus forfeited his objection to the Department's actions regarding relative placement.  (*Ibid.*)

Similarly here, the minor could have raised this issue in response to each of the orders challenged, at detention, at jurisdiction, at the six-month review hearing, or when the minor was moved to a new placement in November 2023.  No one raised an objection in the juvenile court and the record demonstrates no party sought appellate review of those orders.  That failure forfeited these issues.

II

*Relative Placement*

The minor alternatively contends that it was in the minor's best interest to be placed with her grandmother and sibling under section 361.3.  We disagree.

In determining where to place a child removed from the physical custody of the child's parents, preferential consideration is given to relatives.  (§ 361.3, subd. (a); see

19

also § 319, subd. (h)(2).)  A " '[r]elative' " is defined as "an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship."  (§ 361.3, subd. (c)(2); see § 319, subd. (h)(2).)  " 'Section 361.3 gives "preferential consideration" to a relative's request for placement, which means "that the relative seeking placement shall be the first placement to be considered and investigated."  (§ 361.3, subd. (c)(1).)' [Citation.]  'When considering whether to place the child with a relative, the juvenile court must apply the [section 361.3] placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's request for placement.' " (*In re A.K.*, *supra*, 12 Cal.App.5th at p. 498.)  Placement with a relative is neither required nor guaranteed.  (§ 16519.5, subd. (c)(6).)

We review a juvenile court's determination regarding relative placement pursuant to section 361.3 for abuse of discretion.  (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)  "[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling."  (*Ibid.*)  "Broad deference must be shown to the trial judge.  The reviewing court should interfere only ' "if [it] find[s] that under all the evidence, viewed most favorably in support of the [juvenile] court's action, no judge could reasonably have made the order that he[, she, or they] did." ' "  (*Ibid.*)

"Subdivision (a) of section 361.3 lists a panoply of criteria [that] the agency and the court must consider when faced with a request for placement with a relative" (*In re Luke L.* (1996) 44 Cal.App.4th 670, 680), including "[t]he best interest of the child"; "[t]he wishes of the parent, relative, and child"; placement of siblings in the same home "unless that placement is found to be contrary to the safety and well-being of any of the siblings"; "[t]he good moral character of the relative and any other adult living in the home"; the nature and duration of the child's relationship with the relative; and the relative's desire and ability to provide legal permanency for the child if reunification is unsuccessful.  (§ 361.3, subd. (a)(1)-(8); see *Luke L.*, at p. 680; *Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 111.)

Here, the juvenile court held multiple placement/section 366.26 hearings over the course of a year, after which the court considered the Department's numerous reports and heard testimony from several witnesses, including grandmother and the social workers involved in this case. We reject the minor's contentions that the juvenile court did not consider the factors in section 361.3.

The juvenile court properly stated its reasons on the record for denying placement of the minor with grandmother and the minor's sibling. In particular, the juvenile court acknowledged its duty to make an independent placement decision, and included in its analysis of the best interest of the child, the wishes of the mother and father, the compliance with Family Code section 7950,[3] the presence of the minor's brother in grandmother's home, good moral character, the relationship between the minor and grandmother, and whether she could provide a safe, secure, and stable environment for the minor and to provide the home and necessities of life.

In the end, the juvenile court put "the most weight on the best interest of the child, the minimal relationship [with grandmother], and her lack of commitment to following through with the process when she was initially given the opportunity." In that regard, the court noted visits between the minor and grandmother were very limited in number and in time and were video visits only. The juvenile court found minor had bonded with her potential adoptive parents due to the delay that was caused in large part by grandmother's failure to demonstrate she was serious about the resource family approval process. The juvenile court also found the relationship between the minor and her sibling was nonexistent, as both were very young and had spent no time together. The court

---

[3] As the juvenile court noted, substantial evidence in the record established the Department engaged in the resource family approval assessment process of grandmother and that she hindered the completion of that process due to her lack of follow through. Grandmother was given a fair chance to seek placement but failed to take the necessary actions to make that a reality. (*Cesar V. v. Superior Court*, *supra*, 91 Cal.App.4th at p. 1033.)

found the assessment process had been completed, albeit not to grandmother's satisfaction. " 'The overriding concern of dependency proceedings . . . is not the interest of extended family members but the interest of the child,' whose bond with a foster parent may require that placement with a relative be rejected." (*In re J.Y.* (2022) 76 Cal.App.5th 473, 486.) In other words, "[t]he linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 862-863.)

Here, the juvenile court determined placement with grandmother was not in the best interest of the minor. Each of the court's statements is supported by the numerous reports and testimony in the record as recounted in detail in this opinion. Viewing the evidence in the light most favorable to the juvenile court's order and the juvenile court's careful recitation of the reasons for that order (*In re Caden C.* (2021) 11 Cal.5th 614, 640-641), substantial evidence established it was *not* in the minor's best interest to be placed with grandmother and the juvenile court did not abuse its discretion in making that determination.

DISPOSITION

There having been no argument regarding the section 366.26 finding the minor is adoptable and the parental rights were terminated, that portion of the order is affirmed. All other orders of the juvenile court are affirmed.

/s/
ROBIE, J.

We concur:

/s/
EARL, P. J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.